UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

MARISSA COLLINS, on her own behalf, and          :
on behalf of all others similarly situated, and     :
JAMES BURNETT, on behalf of his son, and         :
on behalf of all others similarly situated, and     :
KARYN SANCHEZ, on behalf of her minor           :
son and all others similarly situated,              :
                                                                 :    Case No.: 2:20-cv-1969 (FB) (SIL)
                                                                 :    (Hon. Frederic Block)
                        Plaintiffs,                           :
                                                                 :
                vs.                                            :
                                                                 :
                                                                 :
ANTHEM, INC. and ANTHEM UM               :
SERVICES, INC.,                                       :
                                                                 :
                        Defendant.                        :
                                                                 :
---------------------------------------------------------X

<br>

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

<br>

**REED SMITH LLP**
**10 SOUTH WACKER DRIVE**
**CHICAGO, IL 60606**

**REED SMITH LLP**
**599 LEXINGTON AVENUE, FLOOR 22**
**NEW YORK, NY 10022**

*Attorneys for Defendants Anthem Inc.*
*and Anthem UM Services, Inc.*

## <u>TABLE OF CONTENTS</u>

Page

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   BACKGROUND ................................................................................... 3

      A.    Anthem's Role With Respect to Plaintiffs' Health Benefit Plans ......... 3

      B.    Anthem Has Adopted Industry Standard Guidelines Regarding The Medical Necessity of Inpatient Treatment at RTCs ........................... 4

      C.    Plaintiffs' Complaint Lacks Allegations About Substance Use Disorder Criteria. ............................................................................... 5

III.  LEGAL STANDARD ........................................................................... 7

IV.   ARGUMENT ...................................................................................... 8

      A.    Count I Fails As a Matter of Law Because Anthem's Company-Wide Adoption of the Guidelines Is Not A Fiduciary Act ........................... 9

      B.    The Court Should Dismiss Counts I And II As To Sanchez Because Anthem Does Not Have Absolute and Final Discretion Over Her Claims. ..................... 13

      C.    The Court Should Dismiss Counts III And IV Seeking Equitable Relief Under 29 U.S.C § 1132(a)(3) Because Plaintiffs Have Simply Repackaged Their Claims For Benefits Under 29 U.S.C § 1132(A)(1)(B). .................................... 16

      D.    Plaintiffs Fail to Plausibly Allege that Anthem Violated ERISA With Respect to Its Adoption of Substance Use Disorder Guidelines. ......................... 18

V.    CONCLUSION .................................................................................. 22

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Psychiatric Ass'n. v. Anthem Health Plans*,
  50 F. Supp. 3d 157 (D. Conn. 2014), *aff'd sub nom. Am. Psychiatric Ass'n*,
  821 F.3d 352 ....................................................................................................11

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
  821 F.3d 352 (2d Cir. 2016)..............................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................7, 8, 19, 20

*Biller v. Excellus Health Plan, Inc.*,
  No. 3:14–CV–0043, 2015 WL 5316129 (N.D.N.Y. Sept. 11, 2015) ....................15

*Bushell v. UnitedHealth Grp. Inc.*,
  No. 17-CV-2021 (JPO), 2018 WL 1578167 (S.D.N.Y. Mar. 27, 2018)..................14

*Campbell v. WE Transp., Inc.*,
  No. 18 CV 5354 (MKB)(LB), 2020 WL 3003026 (E.D.N.Y. Mar. 2,
  2020), *report and recommendation adopted,* No. 18-CV-5354 (MKB) (LB),
  2020 WL 1528057 (E.D.N.Y. Mar. 31, 2020)................................................17, 18

*Chapman v. ChoiceCare Long Island Term Disability Plan*,
  288 F.3d 506 (2d Cir. 2002)...............................................................................13

*Ciampa v. Oxford Health Ins., Inc.*,
  No. 14-CV-2989 (DRH) (SIL), 2015 WL 2337385 (E.D.N.Y. May 13, 2015) .....................20

*Coulter v. Morgan Stanley & Co.*,
  753 F.3d 361 (2d Cir. 2014)..............................................................................9, 10

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995)..............................................................................................10

*DeLuca v. Blue Cross Blue Shield of Mich.*,
  628 F.3d 743 (6th Cir. 2010) .............................................................................12

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
  770 F. Supp. 2d 497 (E.D.N.Y. 2011) ..................................................................4

*Doe 1 v. Express Scripts, Inc.*,
  No. 18-346, 2020 WL 7133860 (2d Cir. Dec. 7, 2020).........................................11

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*,
    217 F. Supp. 3d 608 (N.D.N.Y. 2016) ............................................................14, 16

*Flanigan v. Gen. Elec. Co.*,
    242 F.3d 78 (2d Cir. 2001) ...............................................................................11

*Frommert v. Conkright*,
    433 F.3d 254 (2d Cir. 2006) (*rev'd on other grounds in Conkright v.*
    *Frommert*, 559 U.S. 506 (2010)) ..................................................................16, 17

*Gallagher v. Empire HealthChoice Assurance, Inc.*,
    339 F. Supp. 3d 248 (S.D.N.Y. 2018) ...........................................................14, 16

*Guerrero v. FJC Sec. Servs. Inc.*,
    423 F. App'x 14 (2d Cir. 2011) .....................................................................19, 22

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
    571 U.S. 99 (2013) ...........................................................................................13

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) .........................................................................................10

*In re Express Scripts/Anthem ERISA Litig.*,
    285 F. Supp. 3d 655 (S.D.N.Y. 2018) ............................................................12

*Janese v. Fay*,
    692 F.3d 221 (2d Cir. 2012) .............................................................................10

*Johns v. Blue Cross Blue Shield of Mich.*,
    No. 2:08-cv-12272, 2009 WL 646636 (E.D. Mich. Mar. 10, 2009) ...................12

*Jones v. Kodak Med. Assistance Plan*,
    169 F.3d 1287 (10th Cir. 1999) ........................................................................12

*Julie L. v. Excellus Health Plan, Inc.*,
    447 F. Supp. 3d 38 (W.D.N.Y. 2020) .............................................................17, 18

*LI Neuroscience Specialists v. Blue Cross Blue Shield of Fl.*,
    361 F. Supp. 3d 348 (E.D.N.Y., 2019) ...........................................................17

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) .........................................................................................10

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) .......................................................................................13, 18

*Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*,
    No. 19-CV-7972 (VEC), 2020 WL 4895675 (S.D.N.Y. Aug. 19, 2020) .............20

*Moses v. Revlon Inc.*,
    No. 15-CV-4144 (RJS), 2016 WL 4371744 (S.D.N.Y. Aug. 11, 2016), *aff'd*,
    691 F. App'x 16 (2d Cir. 2017) ...................................................................................14

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013)........................................................................................19

*New York State Psychiatric Association, Inc. v. UnitedHealth Group*,
    798 F.3d 125 (2d Cir. 2015)................................................................................. *passim*

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)................................................................................................9, 10

*Prof'l Orthopaedic Assocs., PA v. 1199 Nat'l Ben. Fund*,
    No. 16-cv-4838 (KBF), 2016 WL 6900686 (S.D.N.Y. Nov. 22, 2016), *aff'd*,
    697 F. App'x 39 (2d Cir. 2017) ..................................................................................19

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)............................................................................................6

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)........................................................................................9, 12, 16

*Weissman v. United Healthcare Ins. Co.*,
    1:19-cv-10580-ADB, 2020 WL 1446734 (D. Mass. Mar. 25, 2020) ......................12

*Winfield v. Citibank, N.A.*,
    842 F. Supp. 2d 560 (S.D.N.Y. 2012)..........................................................................4

## Statutes

29 U.S.C § 1132(a)(1)(B) ..................................................................................... *passim*

29 U.S.C § 1132(a)(3)........................................................................................... *passim*

## I.    <u>PRELIMINARY STATEMENT</u>

Defendants Anthem, Inc. and Anthem UM Services, Inc. (together "Anthem"), like all managed care organizations, only reimburse for care that is medically necessary, as that term is defined in a member's benefit booklet.  To determine whether a particular treatment is medically necessary, Anthem may utilize, among other things, condition-specific clinical care guidelines that provide detailed criteria for assessing whether a particular treatment is medically necessary.

Plaintiffs are members of health plans insured and/or administered by Anthem. They bring this putative ERISA class action in a misguided attempt to create and impose new duties under ERISA based on Anthem's alleged use of certain clinical care guidelines to adjudicate Plaintiffs' benefit claims for mental health treatment at residential treatment centers ("RTCs"), facilities which provide inpatient treatment for mental health issues in a non-hospital setting. Amended Compliant ("Am. Compl.") at ¶ 1. The crux of Plaintiffs' allegations is that Anthem's clinical care guidelines used for inpatient RTC care are too restrictive, and therefore, inconsistent with generally accepted standards of medical practice.  As relief, Plaintiffs seek to impose a permanent injunction barring Anthem's use of its guidelines.  Plaintiffs seek to replace Anthem's guidelines with their own self-selected guidelines, developed by industry-groups with a financial stake in approving care pursuant to these alternative guidelines.  However, Plaintiffs' allegations are largely premised on legally-flawed theories that do not state a claim making them ripe for dismissal.

Plaintiffs allege in Count I that Anthem violated its fiduciary duties under ERISA when it adopted the guidelines.  In order to get there, Plaintiffs stretch ERISA's fiduciary obligations beyond the limits imposed by the Supreme Court and Second Circuit by alleging that Anthem engaged in a fiduciary act when it made a company-wide decision to adopt clinical care guidelines for coverage determinations for inpatient RTC care.  The adoption of the guidelines is a

1

quintessential business activity that courts have long held is not a fiduciary act under ERISA.

Plaintiffs also seek to hold Anthem responsible for benefit determinations in circumstances where Anthem was only the claims administrator, and was not financially responsible for paying the claim, and did not have final authority to deny the claim. Courts in the Second Circuit have long held that in such circumstances, the health benefit plan itself – which is financially responsible for the claim, and has final authority to deny the claim – is the correct defendant. Plaintiff Karyn Sanchez, for example, had such a plan which allowed for *two levels* of independent review following Anthem's initial claim adjudication. As such Anthem is not the correct defendant for Count II as it relates to Ms. Sanchez.

Counts III and IV, which assert claims for equitable relief under ERISA's "catchall" provision, 29 U.S.C § 1132(a)(3), should be dismissed as duplicative of Plaintiffs' claim for benefits under 29 U.S.C § 1132(a)(1)(B). The Supreme Court has held that equitable relief under § 1132(a)(3) is only available when a plaintiff does not have adequate remedies under a claim for benefits pursuant to § 1132(a)(1)(B). Plaintiffs have not alleged any additional facts to support their equitable claims, nor do they identify *any* relief that is available under their equitable claims that is *not* available under their benefits claim. The equitable claims are wholly duplicative, and should be dismissed.

Finally, while Plaintiffs make some conclusory references to substance use disorder in their Amended Compliant, Plaintiffs fail to state a claim that they were injured or affected in any way by Anthem's alleged use of its substance use disorder guidelines, which are separate and distinct from mental health guidelines. While Plaintiffs identify the mental health guidelines Anthem allegedly used to adjudicate their claims, Plaintiffs completely fail to identify any substance use disorder guidelines purportedly used by Anthem to adjudicate their benefit claims, or that Anthem

2

used to adjudicate *any* substance use disorder claims.  The vague and conclusory references to substance use disorder guidelines in the Amended Complaint are untethered to any identified guidelines or to Plaintiffs' individual claims against Anthem, and therefore do not meet basic pleading standards.  Plaintiffs have failed to provide "sufficient factual matter" to support claims that they, or putative class members, were affected by Anthem's alleged use or application of any substance use disorder guidelines.  Accordingly, their substance use disorder allegations are not plausible on their face and must be dismissed.

Overall, Plaintiffs have at most alleged a routine ERISA claim for unpaid benefits under § 1132(a)(1)(B).  The Court should reject Plaintiffs' attempts to expand this claim beyond the limits recognized by the Second Circuit and Supreme Court, and grant Anthem's partial motion to dismiss.

## II.     <u>BACKGROUND</u>[1]

### A.     Anthem's Role With Respect to Plaintiffs' Health Benefit Plans

This is a putative class action brought by Plaintiffs Marissa Collins, James Burnett, and Karyn Sanchez (collectively "Plaintiffs"), alleging that they, or their family members, are participants of beneficiaries of health plans insured and/or administered by Anthem and governed by ERISA (the "Plans").  Am. Compl., ¶¶ 13–15.  Plaintiffs claim that Anthem's use of certain mental health clinical care guidelines when adjudicating Plaintiffs' coverage requests for RTCs violated Anthem's fiduciary duties under ERISA.  *Id.* ¶ 22.

Plaintiffs Collins and Burnett, are participants in fully insured plans, which means that Anthem provides decisions on claims for benefits and is responsible for paying benefits due.  *Id.* ¶¶ 3-4, 65(a).  Plaintiff Sanchez is a participant in a self-funded plan, which means that Anthem,

---

[1] Anthem accepts as true the facts Plaintiffs recite in the Amended Complaint for purposes of this motion. Anthem contests many of these facts and does not accept them as true for any other purpose.

in its claims administration capacity, provides initial decisions on requests for benefits in exchange for an administrative fee, but Ms. Sanchez's employer is responsible for paying any benefits due. *Id.* ¶¶ 5, 65(b).

Anthem does not make a final benefits determination with respect to Ms. Sanchez's Plan. After Anthem provides an "internal adverse determination" in its capacity as claims administrator, Ms. Sanchez's Plan provides for an "independent external review."  *See* Medical Benefit Booklet for Toyota Motor North America ("Sanchez Plan") at 69, attached as Exhibit 1.[2,3]  This independent external review decision — not Anthem's internal adverse determination — is "final and binding on all parties[.]"  *Id.* at 70.  But, that is not the end of the appeal process:  Ms. Sanchez's Plan provides an additional "voluntary level of appeal to the Toyota Claims Review Committee" after "the denial of any final appeal decision regarding a claim," including decisions that Anthem renders and decisions on external review.  *Id.*  At this level of appeal, the Claims Review Committee "will not afford deference to the initial claim denial or final adverse benefit determination" but will render its own decision.  *Id.* at 71.  Finally, a participant may seek yet another independent external review of the Claims Review Committee's decision.  *See id.*

## B.    Anthem Has Adopted Industry Standard Guidelines Regarding The Medical Necessity of Inpatient Treatment at RTCs

Anthem members are only entitled to coverage for services at RTCs if the treatment is medically necessary, as that term is defined in their health benefit plans.  Am. Compl. ¶ 17.

---

2 All exhibits are attached to the Declaration of Michelle Kersey dated March 8, 2021.

3 The Court can consider Sanchez's benefit booklet on a motion to dismiss.  *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) ("The Court can properly consider the Plan and the Summary Plan Description on this motion to dismiss because they are essential to the plaintiffs' ERISA claims and incorporated by reference into their complaint."); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) ("[T]he Court may consider the plan documentation submitted by defendants here, because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' complaint.")

Anthem develops or adopts hundreds of policies and guidelines used to assist in its determination of the medical necessity of specific treatments.  To assist in assessing whether inpatient care at RTCs is medically necessary for plan members, Anthem has either adopted its own clinical care guidelines (the "CG-BEH-03"; effective 07/26/2013-11/05/2018) or, more recently, the Milliman Care Guidelines  (adopted 11/05/2018 and currently in use) (collectively, the "Guidelines"). Am. Compl. ¶¶ 28, 42.  Anthem's medical directors and other clinicians allegedly use the Guidelines, along with their independent clinical judgment, to determine whether RTC treatment is medically necessary based upon a member's unique circumstances.  Id. ¶ 22.

## C.    Plaintiffs' Amended Complaint Lacks Allegations About Substance Use Disorder Criteria.

The crux of Plaintiffs' amended complaint is that the Guidelines are more restrictive than the Plans' contractual terms and that Anthem unreasonably relied upon the Guidelines to deny requests for coverage for mental health care received at RTCs.  Am. Compl. ¶ 1.  Further, Plaintiffs allege that the Guidelines apply standards that are more restrictive than generally accepted standards.  *Id.*

Plaintiffs include various allegations regarding Anthem's guidelines related to mental health conditions but make no comparable allegations regarding Anthem's substance use disorder guidelines.  Plaintiffs allege that their case "arises from [Anthem's] development, adoption, and use of certain clinical coverage criteria for determining whether [RTC] treatment of *mental health conditions* is 'medically necessary' . . . ." *Id.* at ¶ 1 (emphasis added).  Plaintiffs further allege that Anthem "applied the MCG Guidelines for Residential Behavioral Health Level of Care (the "MCG RTC Guidelines") described in this [Amended] Complaint to render medical necessity determinations concerning residential treatment for *mental health conditions*, including the determinations at issue in this case." *Id.* at ¶ 9 (emphasis added).  With respect to Anthem's

5

internally developed criteria, Plaintiffs refer to Clinical UM Guideline CG-BEH-03, which only relates to "medical necessity criteria for levels of care relating to psychiatric disorder treatment" and not to substance use disorder. *See* Exhibit 4, attaching the Clinical UM Guideline CG-BEH-03.  In contrast, the Amended Complaint makes scant reference to substance use disorder treatment and identifies no specific criteria that Anthem may have used to adjudicate the medical necessity of such disorders.[4]

The CG-BEH-03 guideline cited in the Amended Complaint specifically references separate and distinct substance use disorder guidelines, but the Amended Complaint does not contain any allegations about those guidelines.  Ex. 4 at 1 (CG-BEH-03, specifically referring to "CG-BEH-04 Substance-Related and Addictive Disorder Treatment"; *see also, generally,* Am. Compl. (containing no allegations regarding CG-BEH-04; and no allegations regarding benefits denials specific to the treatment of substance use disorders).)[5]

Plaintiffs' also do not allege that Anthem used any substance use disorder guidelines to adjudicate their RTC claims.  For example, Plaintiffs Collins and Sanchez only allege mental health conditions. Am. Compl. at ¶ 74 (noting that Collins suffers from, "among other conditions,

---

[4] *See, e.g.,* Am. Compl. at ⁋ 16 (noting that Plaintiffs' health plans cover substance use disorder); *id*. at ⁋ 17 (noting that services for "a mental health and/or substance use condition" must be "medically necessary" to be covered under the terms of the plans.); *id*. at ⁋ 23 (noting that "[g]enerally accepted standards of medical practice, in the context of mental health and substance use disorder services, are standards that have achieved widespread acceptance among behavioral health professionals."); *id.* at ⁋⁋ 53-63 (alleging that Anthem's adoption and use of the certain criteria "constitute the application of treatment limitation(s) to inpatient (intermediate) mental health and substance use disorder benefits that are "separate" and/or "more restrictive" than [Anthem's] treatment limitation(s) for inpatient (intermediate) medical/surgical benefits.")

[5] The Court may consider the CG-BEH-03 and MCG Guidelines for Residential Behavioral Health Level of Care as Plaintiffs have specifically relied on its contents as part of their Amended Complaint.  *See Rothman v. Gregor,* 220 F.3d 81, 88-89 (2d Cir. 2000) (*citing Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).)

major depression and PTSD); *and* ¶ 79 (noting that Sanchez's son "suffers from, among other things, autism spectrum disorder, major depressive disorder, bipolar disorder, and attention deficit/hyperactivity disorder.")  And, Plaintiff Burnett alleges Anthem denied his son's request for coverage of RTC based on CG-BEH-03, which is only used to adjudicate claims for mental health disorders.  Am. Compl. ¶ 72; *see also,* Ex. 4 (CG-BEH-03 guidelines that lists separate a separate guideline for a number of disorders, including for "Substance-related and Addictive Disorder Treatment.").

***

Plaintiffs bring four causes of action:  Count I is for Anthem's alleged breach of fiduciary duties under 29 U.S.C. § 1132(a)(1)(B) in developing, authorizing, and/or using the Guidelines. *Id.* ¶¶ 93-100. Count II is for Anthem UM Services, Inc.'s alleged unreasonable denial of Plaintiffs' claims for benefits under 29 U.S.C. § 1132(a)(1)(B).  *Id.* ¶¶ 101-106. Counts III and IV are for injunctive and other equitable relief under 29 U.S.C. § 1132(a)(3) "to the extent" that relief is inadequate under section 1132(a)(l)(B) to remedy violations alleged in Counts I and II. *Id.* at ¶¶ 107-114.  Plaintiffs seek an order (a) finding the Guidelines are inconsistent with certain plan terms, (b) ordering Anthem to cease using the industry standard, evidence-based Guidelines and to reprocess Plaintiffs' claims pursuant to new, unidentified guidelines; and (c) awarding fees and unidentified equitable relief.  *Id.* at "Requested Relief."

### III.    LEGAL STANDARD

A complaint should be dismissed unless its allegations "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is facially plausible when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" by raising "more than a sheer possibility that a

7

defendant has acted unlawfully." *Id.* While facts alleged in a complaint must be accepted as true, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "[F]ormulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to state a plausible claim for relief. *Id.* at 678–79 (internal quotation marks, brackets, and citation omitted).

## IV.    ARGUMENT

Plaintiffs' Amended Complaint asserts four causes of action under ERISA's civil enforcement provisions. Count I fails because Anthem's alleged development or adoption of the Guidelines across Anthem's entire business is not a fiduciary act as a matter of law. Count II for denial of plan benefits must be dismissed with respect to Plaintiff Sanchez because Anthem was not financially responsible for her claims, nor did it have final authority to adjudicate her benefit claims; Anthem is not the proper defendant with respect to Plaintiff Sanchez's claims. Further, Counts III and IV, which seek unspecified equitable relief under ERISA's "catchall" provision, are impermissibly repackaged claims for benefits for which adequate relief can be provided under Count II. Finally, Plaintiffs allegations regarding Anthem's adoption and use of guidelines to adjudicate substance use disorder claims are conclusory, and should be dismissed. Plaintiffs do not identify these purported substance use disorder guidelines, or allege that Anthem used any substance use disorder guidelines to deny Plaintiffs' benefit claims.

A.    **Count I Fails As a Matter of Law Because Anthem's Company-Wide Adoption of the Guidelines Is Not A Fiduciary Act**

In Count I, Plaintiffs improperly seek to impose an entirely new set of fiduciary obligations on Anthem based on its alleged company-wide decision to adopt the Guidelines.  However, Anthem was not acting in a fiduciary capacity when it allegedly developed or adopted the Guidelines because courts consistently recognize that managed care organizations do not act in a fiduciary capacity when making these company-wide business decisions.    Plaintiffs inappropriately try to impose a fiduciary duty where none exists in ERISA and their claim fails as a result.

ERISA "limit[s] the scope of fiduciary activity to discretionary acts of plan 'management' and 'administration.'"  *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (quoting 29 U.S.C. § 1002(21)(A)).  This means that an ERISA fiduciary "may wear different hats" and only "wear[s] the fiduciary hat when making fiduciary decisions."  *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).  Thus, "[i]n every case charging breach of ERISA fiduciary duty," the "threshold question" is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Id.* at 226; *see also Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) ("'a person may be an ERISA fiduciary with respect to certain matters but not others'") (citation omitted).  ERISA's fiduciary obligations are tethered to "the terms of the plan" and extend only to fiduciary acts thereunder, such as individual benefit determinations.  *See* 29 U.S.C. § 1132(a)(1)(B) (permitting civil actions "to recover benefits due to him under *the terms of his plan*, to enforce his rights under *the terms of the plan*, or to clarify his rights to future benefits under *the terms of the plan*") (emphasis added).

In Count I, Plaintiffs allege that Anthem engaged in a fiduciary act through its alleged business decision to adopt the Guidelines for use in rendering clinical decisions across all Anthem

health plans. *See* Am. Compl. ¶¶ 1, 8 (alleging the Guidelines applied to all plans Anthem administers). But, ERISA's statutory enforcement provisions do not contemplate fiduciary liability for system-wide business decisions regarding the content of all issued health plans independent of the particular denial of benefits to an individual member. The Supreme Court has repeatedly held that "decisions about the content of a plan are not themselves fiduciary acts." *Pegram*, 530 U.S. at 223, 226 (health maintenance organization not an ERISA fiduciary when it "administers or exercises discretionary authority over its own HMO business"); *accord Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (decisions to "'adopt, modify, or terminate welfare plans'" are non-fiduciary acts) (citation omitted); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (same). The Supreme Court explained that this rule "is rooted in the text of ERISA's definition of fiduciary," which assigns fiduciary status "'only when fulfilling certain defined functions'" that "'do not include plan design.'" *Lockheed*, 517 U.S. at 890 (holding that "'an employer may decide to amend an employee benefit plan without being subject to fiduciary review'") (citation omitted). "ERISA's fiduciary duty requirement simply is not implicated" in "decision[s] regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts …." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) (holding that "an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties").

The Second Circuit likewise distinguishes business decisions that impact multiple plans from individual benefit determinations under a particular plan, explaining that a managed care organization "acts as a fiduciary when administering a plan but not when designing or making business decisions allowed for by a plan …." *Coulter*, 753 F.3d at 367–68 (citation omitted); *accord Janese v. Fay*, 692 F.3d 221, 227 (2d Cir. 2012) (decision to amend terms of multi-

10

employer plan not a fiduciary function); *Flanigan v. Gen. Elec. Co*., 242 F.3d 78, 88 (2d Cir. 2001) ("general fiduciary duties under ERISA were not triggered" by "a corporate business decision").

In the context of health benefits, the Second Circuit recently affirmed that the business decisions made by a health plan regarding pharmacy benefits were not fiduciary acts, even if the decisions "may ultimately affect how much plan participants paid for drug prices." *See Doe 1 v. Express Scripts, Inc.*, No. 18-346, 2020 WL 7133860, at *3 (2d Cir. Dec. 7, 2020). This is because "'[a] plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents'" but not "when the decision at issue is, 'at its core, a corporate business decision ….'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 n.2 (2d Cir. 2016) (quoting *Varity*, 516 U.S. at 511, and *Flanigan*, 242 F.3d at 88). Decisions to implement "policies regarding the extent of coverage . . . are business decisions" that do not trigger fiduciary duties. *Am. Psychiatric Ass'n. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 169 (D. Conn. 2014), *aff'd sub nom. Am. Psychiatric Ass'n*, 821 F.3d 352.

Anthem was not acting in a fiduciary capacity when it allegedly developed or adopted the Guidelines. Anthem's alleged decision to adopt coverage guidelines for certain categories of benefits across its system of health plans was not a discretionary judgment as to whether any *individual* is entitled to benefits under that Guidelines or any applicable term of *a specific health plan*, and thus ERISA's fiduciary duties do not apply. *See* Am. Compl. ¶¶ 1, 8 (alleging that Anthem developed and adopted the Guidelines for system-wide application to "welfare benefit plans that Defendants administer" and used them "systematically" to make coverage determinations).

Only Anthem's member-specific benefit determinations — not Anthem's alleged decision

to adopt the Guidelines — are fiduciary acts. *See Varity*, 516 U.S. at 511 (a "fiduciary act" for purposes of ERISA requires "a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents."); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999) (because "we consider the APM [Medical Necessity] criteria a matter of Plan design and structure, rather than implementation, we agree that a court cannot review them" for fiduciary liability). As the Southern District of New York recently explained, ERISA does not authorize fiduciary liability for activities that are "'generally applicable to a broad range of health-care consumers'" and "'not directly associated with the benefits plan at issue ….'" *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 684 (S.D.N.Y. 2018) (citing *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010)). The Southern District relied on *Deluca*, in which the Sixth Circuit distinguished decisions made as "administrator and claims-processing agent," which implicate ERISA's fiduciary obligations, from decisions made as "a distributor of health-care services," which do not. *DeLuca*, 628 F.3d at 746-47 (health care corporation does not act as a fiduciary in negotiating system-wide rates).

Likewise, here, Anthem's alleged system-wide decisions regarding the content and structure of Anthem health plans are not within the scope of ERISA's fiduciary obligations because Anthem made these decisions as a distributor of health care services, not as administrator of any particular benefits plan. *See Weissman v. United Healthcare Ins. Co.*, 1:19-cv-10580-ADB, 2020 WL 1446734, at *6 (D. Mass. Mar. 25, 2020) ("Weissman may not bring a claim challenging the establishment of the Plan itself, as the decisions about the contents of the Plan itself are not fiduciary acts, [however] she can challenge UnitedHealthcare's application of the Plan to her case."); *cf. Johns v. Blue Cross Blue Shield of Mich.*, No. 2:08-cv-12272, 2009 WL 646636, at *4 (E.D. Mich. Mar. 10, 2009) (rejecting plaintiff's argument that defendant's "planwide policy and

12

procedure of denying . . . benefits on the allegedly spurious grounds that ABA is experimental" is a "breach of fiduciary duty independent of the actual nonpayment itself").

Overall, Count I is premised on an ERISA fiduciary obligation that does not exist.  While Plaintiffs may allege fiduciary liability arising out of a coverage determination under the terms of their particular health plans, ERISA provides no basis for Plaintiffs to challenge Anthem's alleged system-wide decision to develop and adopt the Guidelines, and Count I should be dismissed for failure to state a claim.

**B.    The Court Should Dismiss Counts I And II As To Sanchez Because Anthem Does Not Have Absolute and Final Discretion Over Her Claims.**

Counts I and II should be dismissed as to Plaintiff Sanchez because Anthem is not financially responsible, nor does it have final adjudicatory authority with respect to, her benefits claim, and is therefore not the proper defendant for Sanchez's ERISA § 502(a)(1)(B) claims.

An ERISA plan is a contract whose terms create enforceable obligations.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985) (ERISA's enforcement provisions "protect contractually defined benefits").  ERISA provides a cause of action to enforce these contractual obligations, permitting a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (cause of action is "bound up with the written instrument").  But, a participant or beneficiary may only recover from entities who are contractually bound to satisfy obligations under the plan, namely, "'the plan and the administrators and trustees of the plan in their capacity as such ....'"  *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002) (citation omitted).

Unlike the plan, plan administrator, or trustees described in *Chapman*, a "claims

administrator," is generally a third party chosen by the plan, plan administrator, or trustees to administer a plan. In *New York State Psychiatric Association, Inc. v. UnitedHealth Group*, the Second Circuit held that a claims administrator is "an appropriate defendant in a § 502(a)(1)(B) action for benefits" only where the claims administrator has "'sole and absolute discretion' to deny benefits and make 'final and binding' decisions as to appeals of those denials." 798 F.3d 125, 132 (2d Cir. 2015) ("*NYSPA*").[6] Subsequent district court decisions have recognized that where a claims administrator does *not* have absolute and final discretion to deny benefits, a claim administrator cannot be sued. Thus, when an ERISA health plan provides for a right of external appeal of a claims administrator's benefits determination, district courts in the Second Circuit repeatedly hold that the ERISA plan — not the claims administrator — is the proper defendant. *See Gallagher v. Empire HealthChoice Assurance, Inc*., 339 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (dismissing § 1132(a)(1)(B) claim where the plan allowed an appeal of the claims administrator's benefit decision to the plan administrator); *Bushell v. UnitedHealth Grp. Inc.*, No. 17-CV-2021 (JPO), 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (same); *Moses v. Revlon Inc.*, No. 15-CV-4144 (RJS), 2016 WL 4371744, at *3 (S.D.N.Y. Aug. 11, 2016), *aff'd,* 691 F. App'x 16 (2d Cir. 2017) (same); *Easter*, 217 F. Supp. 3d at 630-31 (same). In short, in order for a claims administrator to be sued, the terms of the plan must give the claims administrator "total control over claims for benefits" such that the claims administrator becomes "***the only entity*** capable of providing direct relief …." *NYSPA*, 798 F.3d at 132 (emphasis added).

Plaintiff Sanchez's self-funded plan does not give Anthem "'sole and absolute discretion'

---

6 The Second Circuit expressly refrained from rendering an opinion on "whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant …." *NYSPA*, 798 F.3d at 132 n.5 *see also Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 631 (N.D.N.Y. 2016) (dismissing claims administrator because "there is no governing precedent for holding a claims administrator with less than total control responsible").

to deny benefits and make 'final and binding' decisions as to appeals of those denials" as *NYSPA* requires. 798 F.3d at 132. Plaintiffs explain that Plaintiff Sanchez is:

> [A] participant in, and her son has been a beneficiary of, the Toyota Motor North America, Inc. Health & Welfare Benefit Plan (the "Sanchez Plan"), which is sponsored by Ms. Sanchez's current employer and administered by Anthem Health Plans of Kentucky Inc., a wholly-owned and controlled subsidiary of Defendant Anthem, Inc.

Am. Compl. ¶ 5. The Sanchez Plan describes Anthem as "[t]he company the Plan Sponsor chose to administer its health benefits" who "provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims." Sanchez Plan at 89, Ex. 1. After Anthem provides an "internal adverse determination" in its capacity as claims administrator, the Sanchez Plan provides for two additional levels of independent external review. *Id.* at 69-70. The final level of review, by the Toyota Claims Review Committee, does not "afford deference to the initial claim denial or final adverse benefit determination" but will render its own decision. *Id.* at 71. Finally, a participant may seek yet another independent external review of the Claims Review Committee's decision. *See id.*

Sanchez's benefit booklet affirmatively establishes that Anthem is anything but the final decision maker on claims under the Sanchez Plan, which makes Anthem an improper defendant for Sanchez's § 502(a)(1)(B) claim. "[E]ven if [Anthem] can be rationally said to have had 'sole and absolute discretion' *to deny Plaintiff benefits*, [Anthem] cannot be rationally said to have made a 'final and binding' decision as to Plaintiff's appeal from such a denial." *Biller v. Excellus Health Plan, Inc.*, No. 3:14–CV–0043 (GTS/DEP), 2015 WL 5316129, at *13 (N.D.N.Y. Sept. 11, 2015) (emphasis added) (claims administrator not proper defendant when plan binds claims administrator to determination of "External Appeal Agent"). Where, as here, the claim administrator "makes an initial determination as to a benefit claim and resolves the first appeal concerning a denial of benefits," but "does not make 'final and binding decisions as to appeals,'" that claims administrator

does not have "total control over claims for benefits," and is not the proper defendant for § 502(a)(1)(B) claims. *Gallagher,* 339 F. Supp. 3d at 255 (quoting *NYSPA*, 798 F.3d at 132). *Easter*, 217 F. Supp. 3d at 631 (same).  Accordingly, Counts I and II, as to Sanchez, should be dismissed.

**C.    The Court Should Dismiss Counts III And IV Seeking Equitable Relief Under 29 U.S.C § 1132(a)(3) Because Plaintiffs Have Simply Repackaged Their Claims For Benefits Under 29 U.S.C § 1132(A)(1)(B).**

Plaintiffs' claims for equitable relief under 29 U.S.C § 1132(a)(3) in Counts III and IV – which are premised on the exact same alleged conduct and injury as Plaintiffs' claim for benefits in Counts I and II -- should be dismissed because they are duplicative of their claim for benefits under 29 U.S.C § 1132(a)(1)(B).

In *Varity*, the Supreme Court explained that Section 1132(a)(3) is a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132(a)(1)(B)] does not elsewhere adequately remedy." 516 U.S. at 512.  However, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 515 (internal quotation marks omitted).

The Second Circuit has interpreted *Varity* as mandating the dismissal of § 1132 (a)(3) claims that merely repackage § (a)(1)(B) claims. *See Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) (*rev'd on other grounds in Conkright v. Frommert*, 559 U.S. 506 (2010)) (citing *Varity*, 516 U.S. at 512); *accord NYSPA*, 798 F.3d at 134 (Section 1132(a)(1)(B) claims repackaged as § 1132 (a)(3) claims are subject to dismissal as duplicative).  In *Frommert*, plaintiffs sought equitable relief consisting of the "recalculation of their benefits consistent with the terms of the Plan …." *Id.* at 270. The Second Circuit affirmed the district court's dismissal of the equitable claims, holding that this relief "falls comfortably within the scope of § 502(a)(1)(B)" and "there is no need on the facts of this case to also allow equitable relief under § [1132](a)(3)." *Id.*

16

District courts throughout the Second Circuit continuously apply *Frommert* to dismiss claims like Plaintiffs' claims here that are stated in equitable terms but seek relief available as a remedy under § 1132(a)(1)(B).  *See, e.g.*, *Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 53 n.5 (W.D.N.Y. 2020) ("To the extent Plaintiffs seek the same type of remedy that is being sought with the § 502(a)(1)(B) claim . . . the Court agrees with Defendants that Plaintiffs cannot pursue this relief as a Parity Act claim pursuant to § 502(a)(3)") (citing *Frommert*, 433 F.3d at 269–70); *Campbell v. WE Transp., Inc.*, No. 18 CV 5354 (MKB)(LB), 2020 WL 3003026, at *10 (E.D.N.Y. Mar. 2, 2020), *report and recommendation adopted,* No. 18-CV-5354 (MKB) (LB), 2020 WL 1528057 (E.D.N.Y. Mar. 31, 2020) (dismissing § 1132(a)(3) where plaintiff seeks "the same damages sought under her [§ 1132(a)(1)(B)] claim") (citing *Frommert*, 433 F.3d at 269–70); *LI Neuroscience Specialists v. Blue Cross Blue Shield of Fla.*, 361 F. Supp. 3d 348, 357 (E.D.N.Y., 2019) ("despite purportedly seeking equitable relief, the remedy sought is clearly legal in the form of money damages, because plaintiff 'seek[s] no more than compensation for loss resulting from the defendant's breach of legal duty'") (quoting *Frommert*, 433 F.3d at 270).

Here, Plaintiffs'§ 1132(a)(1)(B) claims seek damages for Anthem allegedly "artificially decreas[ing] the scope of coverage available under the plans" and applying Guidelines that were "inconsistent with the applicable plan terms."  *See* Am. Compl. ¶¶ 98, 105.  Plaintiffs offer *no* additional facts to support Counts III and IV, nor any insight into why the remedies they seek under § 1132(a)(1)(B) would not provide them with complete relief.  On the contrary, Plaintiffs allege that they are seeking equitable relief "only to the extent that the Court finds that the equitable relief available pursuant to 29 U.S.C. § 1132(a)(l)(B) is inadequate to remedy the violations alleged in Counts I [breach of fiduciary duty] and/or II [unreasonable denial of benefits]."  Am. Compl. ¶¶ 108, 112.  However, Plaintiffs never specify the theoretical relief they seek that is only available

under § 1132(a)(3).  Indeed, all of the relief sought in Plaintiffs' Request for Relief — reprocessing a claim for benefits, declaratory relief, and injunctive relief — is available under § 1132(a)(1)(B).  *See Russell*, 473 U.S. at 146-47, ("To recover the benefits due her, [plaintiff] could have filed an action pursuant to § 502(a)(1)(B) to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future.").

In sum, Plaintiffs' allegations fail under *Varity* because § 1132(a)(1)(B) provides a complete remedy and Counts III and IV alleging violation of § 1132(a)(3) are simply repackaged, unnecessarily duplicative versions of their § 1132(a)(1)(B) claims.  Accordingly, Counts III and IV should be dismissed. *Julie L.*, 447 F. Supp. 3d at 53 n.5; *Campbell*, 2020 WL 3003026, at *10.

## D.    Plaintiffs Fail to Plausibly Allege that Anthem Violated ERISA With Respect to Its Adoption of Substance Use Disorder Guidelines.

Plaintiffs attempt to sweep in claims relating to substance use disorder guidelines through scant, generic references to substance use disorder in the Amended Complaint, but substance use disorder claims are adjudicated using separate and distinct guidelines from those used for mental health claims.  The Amended Complaint has no allegations identifying the substance use disorder guidelines Anthem purportedly used, how those guidelines violate any plan terms, or that they were used to adjudicate Plaintiffs' benefit claims at issue in this lawsuit.  Because Plaintiffs fail to provide "sufficient factual support" substantiating that their benefit claims were adjudicated using any substance use disorder guidelines, Plaintiffs fail to state a claim upon which relief can be granted with respect to their claim that these unidentified guidelines violate ERISA.  This Court should dismiss the Amended Complaint to the extent Plaintiffs seek relief based on their generalized and conclusory claims regarding Anthem's adoption of substance use disorder guidelines.

Under the *Iqbal* standard, the allegations in a complaint must contain "sufficient factual matter" to state a claim to relief that is "'plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "[F]actual content that is 'merely consistent with,' rather than suggestive of, a finding of liability will not support a reasonable inference." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,* 709 F.3d 109, 121 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). In the ERISA context, the Second Circuit has dismissed claims for failing to meet this standard where plaintiffs do not specifically identify the acts or policies that constitute the alleged ERISA violation. *See NYSPA*, 798 F.3d at 135 (2d Cir. 2015) (affirming dismissal of claim under the federal Mental Health Parity and Addiction Equity Act ("Parity Act") where "the amended complaint fail[ed] specifically to allege how United treated 'evaluation and management' services for medical/surgical care, fail[ed] plausibly to allege that United's treatment of such services for mental health care violated the Parity Act . . .  and fail[ed] to allege facts making it plausible that United reduced or denied benefits for medically necessary services 'without any basis' under the terms of those plans."); *Guerrero v. FJC Sec. Servs. Inc*., 423 F. App'x 14, 17 (2d Cir. 2011) (affirming dismissal of ERISA claim for benefits where plaintiff's "allegations were so vague that he did not suggest any basis for relief"); *Prof'l Orthopaedic Assocs., PA v. 1199 Nat'l Ben. Fund,* No. 16-cv-4838 (KBF), 2016 WL 6900686, at *6 (S.D.N.Y. Nov. 22, 2016) (dismissing the ERISA Section 502(a)(1)(B) claim as "completely devoid of the required specificity necessary to maintain a claim" because the complaint did not contain any specific allegations regarding the terms of the benefit plan that were allegedly violated), *aff'd*, 697 F. App'x 39, 41 (2d Cir. 2017) (affirming dismissal of the ERISA claim because the plaintiff "failed to state a plausible claim for relief" where the complaint did not "identify any provision in the plan documents requiring the Fund to pay [usual, customary, and reasonable] rates"); *Ciampa v. Oxford Health Ins., Inc.,* No. 14-CV-

2989 (DRH) (SIL), 2015 WL 2337385, at *3 (E.D.N.Y. May 13, 2015) (plaintiff did not plausibly allege that she was wrongfully denied a benefit owed under the benefit plan. The "repeated assertion that Oxford did not provide 'first class' coverage is insufficient to state a claim," without "any facts to suggest Oxford miscalculated her benefits or did not provide appropriate amounts of coverage in accordance with her plan."); *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-CV-7972 (VEC), 2020 WL 4895675, at *3-4 (S.D.N.Y. Aug. 19, 2020) (plaintiff has not adequately pleaded a violation of ERISA where "there are no well-pleaded allegations as to any plan terms that [United] may have violated" and the plaintiff "has not pleaded any non-conclusory facts that support" the belief that United discriminated against out-of-network providers in violation of the plan).

Plaintiffs concede, as they must, that mental health and substance use disorder are separate and distinct conditions, which are adjudicated using different clinical care guidelines. *See*, *e.g.*, Am. Compl. at ¶ 16 (referencing "mental health" and "substance use disorders" as distinct conditions that are both covered under Plaintiffs' health plans); *see also,* ¶¶ 23 & 24. Plaintiffs' allegations regarding Anthem's alleged adoption of mental health guidelines include details about the guidelines Anthem uses, the purported deficiencies with these guidelines, how these guidelines were used to adjudicate Plaintiffs' claims, and the alternative guidelines Anthem should have used instead. Am. Compl. at ¶¶ 28-52**.** These allegations are necessary to provide the Court with "factual matter" that would allow it to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Amended Compliant contains no similar allegations related to any substance use disorder guidelines and does not identify the substance use disorder guidelines Anthem purportedly uses or the supposed deficiencies with these unidentified guidelines. *See generally*

Am. Compl. In fact, none of the Plaintiffs even allege that any substance use disorder guidelines were used to adjudicate their own claims. *See* Am. Compl. ¶¶ 69-82.

Indeed, the Amended Complaint only identifies two guidelines whose purported adoption allegedly violated ERISA, but both of those guidelines only relate to the adjudication of mental health claims, not substance use disorder claims. The first guideline is Anthem's internally developed guideline, CG-BEH-03, which is only used for mental health disorders and specifically refers to a separate, distinct guideline for substance use disorder. *See* Am. Compl. ¶¶ 20, 22, 27-38 (allegations regarding CG-BEH-03); Ex. 4 (CG-BEH-03).  The second guideline Plaintiffs reference is the "MCG Guidelines for Residential Behavioral Health Level of Care," which similarly only relates to mental health claims, and not substance use disorder. Am. Compl. ¶¶ 9, 21-22, 27, 39-52 (allegations regarding MCG RTC Guidelines); Exs. 5-6 (MCG RTC Guidelines).

Plaintiffs assert that Anthem harmed them by purportedly using the mental health CG-BEH-03 and the MCG RTC Guidelines to adjudicate their claims.  Am. Compl. ¶¶ 69-82.  In contrast, there are *no allegations whatsoever* with respect to any substance use disorder criteria. Plaintiffs' sole allegations related to substance use disorder guidelines appear to be an afterthought tacked on to their allegations regarding the mental health guidelines.  For example, in Paragraph 63, Plaintiffs allege that "Defendants' adoption and use of the MCG RTC Guidelines thus constitute the application of treatment limitation(s) to inpatient (intermediate) mental health and substance use disorder benefits…."  However, the MCG RTC Guidelines referenced in the Amended Complaint are only used to evaluate mental health claims, not substance use disorder claims.

Overall, Plaintiffs fail to identify any substance use disorder guidelines Anthem purportedly used, how any such guidelines violated any plan terms, or that such guidelines were

used in any way to adjudicate Plaintiffs' or putative class members' benefit claims. Plaintiffs' allegations that Anthem violated ERISA by adopting these unidentified substance use disorder guidelines are wholly conclusory and should be dismissed. *See NYSA,* 798 F.3d at 135 (affirming dismissal of Parity Act claim where plaintiffs did not plausibly allege that defendants acts violated plan terms); *Guerrero,* 423 F. App'x at 17 (affirming dismissal of ERISA claim for benefits because plaintiff's allegations were vague).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Anthem respectfully requests that this Court enter an Order granting this Motion and dismissing Counts I, III and IV of Plaintiffs' Amended Complaint, as well as all allegations regarding substance use disorder guidelines as to all Plaintiffs, and Count II as to Karyn Sanchez.

Dated: March  8, 2021                    Respectfully submitted,


                                         REED SMITH LLP


                                         /s/ *Martin J. Bishop*
                                         Martin J. Bishop
                                         Rebecca R. Hanson
                                         10 South Wacker Drive
                                         Chicago, IL 60606
                                         Telephone: (312) 207-1000
                                         Facsimile: (312) 207-6400
                                         mbishop@reedsmith.com
                                         rhanson@reedsmith.com

                                         Samuel Kadosh
                                         599 Lexington Avenue
                                         New York, NY 10022
                                         Telephone: (212) 521-5400
                                         Fascimile: (212) 521-5450
                                         skadosh@reedsmith.com

                                         *Attorneys for Defendants Anthem Inc.*
                                         *and Anthem UM Services, Inc.*