**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARISSA COLLINS, on her own behalf, and on behalf of all others similarly situated, JAMES BURNETT, on behalf of his son, and on behalf of all others similarly situated, and KARYN SANCHEZ, on behalf of her minor son and all others similarly situated, | Civil Action No. 2:20-cv-01969-FB-SIL |
| Plaintiffs, | The Honorable Frederic Block |
| v. | |
| ANTHEM, INC. and ANTHEM UM SERVICES, INC., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      Introduction ................................................................................................................ 1

II.     Facts Alleged in the Complaint.................................................................................. 2

III.    Argument .................................................................................................................... 4

        A.      Standard of Review .......................................................................................... 4

        B.      The Amended Complaint Plausibly Alleges Defendants Were Acting as
                Fiduciaries When They Adopted and Applied the Guidelines............................... 4

        C.      Anthem is a Proper Defendant for Plaintiff Sanchez's Claims Under Section
                1132(a)(1)(B)............................................................................................ 10

        D.      The Court Should Not Dismiss Counts III and IV because Statutory and Case
                Law Explicitly Allow for Alternative Pleading. .................................................. 15

        E.      There are no "Substance Abuse Claims" to Dismiss—Only Class Certification
                Allegations, Which the Court Should Address After Discovery............................ 17

IV.     Conclusion ............................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Psychiatric Ass'n v. Anthem Health Plans*,
    50 F. Supp. 3d 157 (D. Conn. 2014) ........................................................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 4, 7, 20

*Bank v. R & D Strategic Sols., LLC*,
    No. 12-CV-01368 (DLI) (VMS), 2013 WL 1171108 (E.D.N.Y. Mar. 20, 2013) .................. 18

*Barrom v. Roux Labs.*,
    3 F.R.D. 175 (S.D.N.Y. 1942) ............................................................................. 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 4, 20

*Blatt v. Marshall & Lassman*,
    812 F.2d 810 (2d Cir. 1987) ................................................................................. 5

*Bushell v. UnitedHealth Grp. Inc.*,
    No. 17-CV-2021 (JPO), 2018 WL 1578167 (S.D.N.Y. Mar. 27, 2018) .............................. 13

*Cigna Corp. v. Amara*,
    563 U.S. 421 (2011) ......................................................................................... 17

*Coulter v. Morgan Stanley & Co. Inc.*,
    753 F.3d 361 (2d Cir. 2014) ................................................................................. 8

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ........................................................................................... 8

*DeLuca v. Blue Cross Blue Shield of Mich.*,
    628 F.3d 743 (6th Cir. 2010) ........................................................................... 9, 10

*Des Roches v. Cal. Physicians' Serv.*,
    320 F.R.D. 486 (N.D. Cal. 2017) ......................................................................... 6, 8

*Doe 1 v. Express Scripts, Inc.*,
    837 F. App'x 44 (2d Cir. 2020) .......................................................................... 5, 8

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*,
    217 F. Supp. 3d 608 (N.D.N.Y. 2016) ..................................................................... 13

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989)............................................................................................ 7

*Flanigan v. Gen. Elec. Co.*,
   242 F.3d 78 (2d Cir. 2001) ................................................................................ 8

*Frommert v. Conkright*,
   433 F.3d 254 (2d Cir. 2006) ............................................................................ 16

*Gallagher v. Empire HealthChoice Assurance, Inc.*,
   339 F. Supp. 3d 248 (S.D.N.Y. 2018) ............................................................ 13

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
   530 U.S. 238 (2000).......................................................................................... 11

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ............................................................ 18

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999).......................................................................................... 8

*Janese v. Fay*,
   692 F.3d 221 (2d Cir. 2012) ............................................................................ 8

*Johns v. Blue Cross Blue Shield of Mich.*,
   No. 2:08-cv-12272, 2009 WL 646636 (E.D. Mich. Mar. 10, 2009)................ 10

*Jones v. Kodak Med. Assistance Plan*,
   169 F.3d 1287 (10th Cir. 1999) ...................................................................... 9

*Larson v. United Healthcare Ins. Co.*,
   723 F.3d 905 (7th Cir. 2013)............................................................................ 6

*Lockheed Corp. v. Spink*
   517 U.S. 882 (1996).......................................................................................... 8

*LoPresti v. Terwilliger*,
   126 F.3d 34 (2d Cir. 1997)................................................................................ 5

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985).......................................................................................... 7

*Meidl v. Aetna, Inc.*,
   346 F. Supp. 3d 223 (D. Conn. 2018) ............................................................ 6

*Moses v. Revlon Inc.*,
   No. 15-CV-4144 (RJS), 2016 WL 4371744 (S.D.N.Y. Aug. 11, 2016), *aff'd*, 691 F. App'x 16
   (2d Cir. 2017)................................................................................................... 13

*N.Y. Islanders Hockey Club, LLP v. Comerica Bank—Tex.*,
    71 F. Supp. 2d 108 (E.D.N.Y. 1999) ................................................................ 18

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
    798 F.3d 125 (2d Cir. 2015) ............................................. 11, 12, 13, 14, 15

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ........................................................................................ 8

*Schonholz v. Long Island Jewish Med. Ctr.*,
    858 F. Supp. 350 (E.D.N.Y. 1994) .................................................................. 4

*Silva v. Metro. Life Ins. Co.*,
    762 F.3d 711 (8th Cir. 2014) ........................................................................ 15

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ........................................................................... 5, 6, 7, 16

*Weissman v. United Healthcare Ins. Co.*,
    No. 1:19-cv-10580-ADB, 2020 WL 1446734 (D. Mass. Mar. 25, 2020) .................. 8

*Winkler v. Metro. Life Ins. Co.*,
    340 F. Supp. 2d 411 (S.D.N.Y. 2004) ............................................................. 7

*Wit v. United Behavioral Health*,
    No. 14-cv-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) .................... 6

*Wit v. United Behavioral Health*,
    No. 14-cv-02346-JCS, 2020 WL 6469764 (N.D. Cal. Nov. 3, 2020) .................... 8

**Statutes**

29 U.S.C. § 1001(b) ........................................................................................... 14

29 U.S.C. § 1002(21)(A) ..................................................................................... 5

29 U.S.C. § 1104 ............................................................................................ 5, 11

29 U.S.C. § 1104(a)(1)(D) .................................................................................. 7

29 U.S.C. § 1132(a) ........................................................................... 5, 11, 14, 16

29 U.S.C. § 1132(a)(1)(B) ........................................... 5, 10, 11, 12, 13, 15, 16, 17

29 U.S.C. § 1132(a)(3) ............................................................ 5, 11, 12, 15, 16, 17

29 U.S.C. § 1132(a)(3)(A) ................................................................................ 16

29 U.S.C. § 1132(a)(3)(B) ........................................................................... 15, 16

29 U.S.C. § 1185d.................................................................................................. 14

42 U.S.C. § 300gg-19(b)....................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................... 19

Fed. R. Civ. P. 23.................................................................................................. 18

Fed. R. Civ. P. 8........................................................................................... 1, 15, 17

Fed. R. Civ. P. 8(a)(3)........................................................................................... 15

## I.    **INTRODUCTION**

Defendants Anthem, Inc. and Anthem UM Services, Inc. (collectively "Anthem" or "Defendants") move to dismiss *part*—but not all—of Plaintiffs' Amended Complaint.[1] Each of Anthem's arguments, however, fundamentally mischaracterizes Plaintiffs' claims, depends upon factual assertions not alleged in the Amended Complaint, and ignores or misconstrues controlling law. First, Anthem argues that its adoption of a standardized interpretation of a term appearing in all of its plans was not a "fiduciary act," even though ERISA and the very Supreme Court case on which Anthem relies establish that Anthem's conduct falls well within ERISA's broad, functional definition of a "fiduciary." Second, Anthem contends it is immune from being sued for its misconduct in administering self-funded plans, not only by ignoring the statute and Supreme Court authority, but also by misreading controlling Second Circuit precedent making clear that Anthem enjoys no such immunity. Third, Anthem seeks to strip away some of Plaintiffs' potentially available remedies by arguing that Plaintiffs are precluded from pleading in the alternative under ERISA, even though Rule 8 and controlling Second Circuit law explicitly permit it. Lastly, Anthem tries to head off discovery relating to class certification by urging the Court to make a premature ruling that the Named Plaintiffs may not represent class members with substance use disorders, even though the Amended Complaint plausibly alleges that those putative class members were just as similarly situated to the Named Plaintiffs as members with mental health diagnoses. None of Anthem's arguments has merit.

---

[1] Anthem does not seek to dismiss the claims Plaintiffs Collins and Burnett assert in Count II of the Amended Complaint, that Anthem wrongfully denied their requests for coverage based upon clinical guidelines that conflicted with the terms of Plaintiffs' plans. Am. Compl. ¶¶ 69; 72–73; 75–77. Anthem also does not seek to dismiss the class allegations arising from those claims. Thus, no matter how the Court rules on this motion, the case will proceed to discovery and Plaintiffs will move for class certification.

II.     **FACTS ALLEGED IN THE COMPLAINT**

Plaintiffs are beneficiaries of employer-sponsored health plans (the "Plans") administered by Defendants and governed by ERISA. Am. Compl. ¶¶ 3–5, 12–15. The Plans cover medical/surgical, and "behavioral health conditions" (i.e., mental illnesses and substance use disorders). *Id.* ¶ 16. Among the services the Plans cover are intermediate services, including residential treatment for behavioral health conditions. *Id.* ¶ 16. The Plans provide benefits for healthcare services only if they are medically necessary, among other requirements. *Id.* ¶ 17. The Plans define "medically necessary," in relevant part, to mean that the service for which coverage is requested must be provided "in accordance with generally-accepted standards of medical practice." *Id.* ¶ 17.

Under the terms of the Plans, Defendants have the discretionary authority to interpret these written plan terms and to make medical necessity determinations in order to decide whether to approve coverage for services requested by the Plan members. *Id.* ¶ 18. Exercising that discretion, Anthem, Inc. developed and authorized the use of Coverage Guideline ADMIN.00004 (entitled "Medical Necessity Criteria"), Coverage Guideline ADMIN.00001 (entitled "Coverage Guideline Formation"), and Clinical UM Guideline CG-BEH-03 (regarding "Psychiatric Disorder Treatment"). *See id.* ¶¶ 18–20. In November 2018, Anthem further authorized the company-wide use of the MCG RTC Guidelines for residential mental health treatment. *Id.* ¶ 21. Defendant Anthem UM used these guidelines to make final and binding medical necessity determinations under the plans it administered, including Anthem's commercial health plans. *Id.* ¶ 8. As Defendants' denial letters to Plaintiffs reflect, Anthem UM used these guidelines to deny Plaintiffs' requests for coverage. *Id.* ¶ 69.

Plaintiff Burnett's young adult son suffers from, among other conditions, major depression, multiple anxiety disorders, and cannabis use disorder. *Id.* ¶ 71. From September 26,

2018 to October 22, 2018, Plaintiff Burnett's son received residential treatment for his co-occurring behavioral health conditions at Sierra Tucson. *Id.* ¶ 71. Anthem UM denied Plaintiff Burnett's son's request for coverage on the ground that residential treatment was not medically necessary under Clinical UM Guideline CG-BEH-03. *Id.* ¶ 72. Plaintiff appealed; Anthem UM denied the appeal on the same ground. *Id.* ¶ 73.

Plaintiff Collins suffers from, among other conditions, major depression and PTSD. *Id.* ¶ 74. From August 27, 2019 until September 24, 2019, Plaintiff Collins received residential treatment for her mental health conditions at Rogers Memorial Hospital ("Rogers"). *Id.* ¶ 74. Anthem UM denied Plaintiff Collins' request for coverage on the ground that residential treatment was not medically necessary based on the MCG RTC Guidelines. *Id.* ¶ 75. Collins appealed twice; both appeals resulted in a denial of coverage by Anthem UM on the ground that residential treatment was not medically necessary under the MCG RTC Guidelines. *Id.* ¶¶ 75–77.

Plaintiff Sanchez's minor son suffers from, among other things, autism spectrum disorder, major depressive disorder, bipolar disorder, and attention deficit/ hyperactivity disorder. *Id.* ¶ 79. Plaintiff Sanchez's son received residential treatment for his mental health conditions at Meridell Achievement Center from February 27, 2020 until May 22, 2020. *Id.* ¶ 79. Anthem UM denied Plaintiff Sanchez's son's request for coverage from May 11, 2020 onward on the ground that residential treatment was not medically necessary based on the MCG RTC Guidelines. *Id.* ¶ 80. Plaintiff Sanchez appealed the denial on her son's behalf, but the denial was upheld on the ground that the services were not medically necessary under the MCG Guidelines. *Id.* ¶ 81.

In sum, Defendants illegally narrowed the scope of coverage available under Plaintiffs' plans and shifted risk that otherwise would have been borne by Plaintiffs' plans directly to

Plaintiffs, thereby making their benefits less valuable. By using those flawed criteria to deny Plaintiffs' requests for coverage, Defendants deprived Plaintiffs of their rights under ERISA to have their requests for benefits determined in accordance with the written terms of their plans, making the denials unreasonable and an abuse of discretion. Accordingly, Plaintiffs, and all others similarly situated, have suffered legally cognizable injuries, and Defendants are liable for breaching their fiduciary duties of loyalty, care, and prudence and for violating ERISA and the Plaintiffs' Plans. Dismissal here would be inappropriate and run afoul of established law.

## III.    ARGUMENT

### A.    Standard of Review

To survive dismissal, a complaint need not contain detailed factual allegations, merely "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a proper complaint need only allege facts sufficient to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a motion to dismiss, the court "must accept as true the material facts alleged in the complaint and must construe all reasonable inferences in favor of the plaintiff." *Schonholz v. Long Island Jewish Med. Ctr.*, 858 F. Supp. 350, 352 (E.D.N.Y. 1994) (citation omitted).

### B.    The Amended Complaint Plausibly Alleges Defendants Were Acting as Fiduciaries When They Adopted and Applied the Guidelines.

Anthem's argument that it was not acting in a fiduciary capacity when it adopted and applied the Guidelines, Mot. at 9–14, is grounded in the erroneous assertion that adopting the Guidelines was merely a company-wide "business decision" that did not implicate Anthem's fiduciary duties. *Id.* at 9. This assertion ignores the allegations in the Amended Complaint, has no support in the law, and is actually contradicted by Anthem's own words.

ERISA—in a provision Anthem all but ignores—provides that *anyone* who exercises *any* discretion over the management or administration of an ERISA plan is a fiduciary. 29 U.S.C. § 1002(21)(A).[2] Anthem's only mention of that statutory definition is in a parenthetical to a cite to the Supreme Court's decision in *Varity*, which Anthem misleadingly portrays as recognizing a limitation on fiduciary duties that might be relevant here. Mot. at 9 (quoting *Varity*, 516 U.S. at 502). But in the same paragraph from which Anthem quotes, *Varity* goes on to emphasize that the terms "management" and "administration" are "not self-defining," but must be interpreted in light of the common law of trusts. 516 U.S. at 502. Under "ordinary trust law . . . to act as an administrator is to perform the duties imposed, or exercise the powers conferred, by the trust documents," which also "implicitly confer 'such powers as are necessary or appropriate for the carrying out of the purposes' of the trust." *Id.*[3] Thus, as *Varity* instructs, an ERISA plan administrator is performing a fiduciary act whenever it carries out the duties imposed on it by the plan, exercises powers conferred on it by the plan, or exercises powers that are necessary or appropriate for carrying out the purposes of the plan. *Id.*

Consistent with *Varity*, courts typically apply "a functional approach to determine which individuals and entities are ERISA fiduciaries 'by focusing on the function performed, rather than on the title held.'" *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 48 (2d Cir. 2020) (quoting *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987)). *See also, e.g.*, *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (ERISA's definition of fiduciary is "functional");

---

[2] In a provision Anthem does completely ignore, the statute also explicitly imposes on all such fiduciaries duties of prudence, care, and loyalty to plan members like Plaintiffs, and faithful application of plan terms. 29 U.S.C. § 1104. And the statute clearly provides that if an ERISA fiduciary breaches its duties, it can be sued. *See* 29 U.S.C. § 1132(a); *Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996) (breaches of fiduciary duty can be remedied through 29 U.S.C. §§ 1132(a)(1)(B) ***or*** (a)(3)).

[3] *Varity* thus leaves no doubt that Anthem's unsupported assertion that "[o]nly Anthem's member-specific benefit determinations . . . are fiduciary acts," Mot. at 11–12, has no support in the statute or in case law.

*Larson v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in **functional** terms of control and authority over the plan, thus **expanding** the universe of persons subject to fiduciary duties.") (emphasis added) (citations omitted). Courts also routinely allow ERISA plaintiffs to bring breach of fiduciary duty claims challenging standards or criteria used by a third-party administrator of multiple plans. *See, e.g.*, *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 WL 1033730, at *5 (N.D. Cal. Mar. 5, 2019); *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 230 (D. Conn. 2018) (denying defendant's motion for summary judgment in case alleging administrator breached fiduciary duties by adopting a Clinical Policy Bulletin that classified a particular treatment as experimental for purposes of all plans); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 491 (N.D. Cal. 2017) (certifying class in case alleging administrator's Medical Necessity guidelines were inconsistent with plan terms); Order Granting Mot. for Class Certification, *Jones v. United Behavioral Health*, No. 3:19-cv-06999-RS (N.D. Cal. Mar. 11, 2021) (certifying class in case alleging guidelines were inconsistent with generally accepted standards of care).

The Amended Complaint more than plausibly alleges that Anthem's development and adoption of the Guidelines were fiduciary acts within the meaning of the statute, as interpreted in *Varity*. As alleged, the plans conferred on Anthem the duty and responsibility to determine whether to approve coverage for services when requested by plan members. Am. Compl. ¶ 18. This duty necessarily required Anthem to make discretionary decisions about benefits and to interpret the plan terms, including the meaning of the medical necessity definition that was common to all of the Plaintiffs' plans. *Id*. ¶¶ 17–18. To ensure that its interpretations and applications of that common plan term were consistent, Anthem adopted clinical guidelines and

required its reviewers to use them when making benefit determinations under each plan.[4] *Id.*

¶¶ 18–20. These facts, which must be taken as true when assessing Anthem's Motion to Dismiss,

demonstrate that Anthem's adoption of its clinical guidelines was, at a minimum, "an exercise of

a power 'appropriate' to carrying out an important plan purpose," *Varity*, 516 U.S. at 502, and

thus well within ERISA's definition of a fiduciary act.

Indeed, many courts (including the Supreme Court, on multiple occasions) have held that

interpreting plan terms—the sole purpose for which Anthem adopted its clinical Guidelines, Am.

Compl. ¶¶ 17–20—is a quintessential fiduciary act. *See, e.g.*, *Firestone Tire & Rubber Co. v.*

*Bruch*, 489 U.S. 101, 115 (1989) (benefits administrator acts as a fiduciary when exercising

discretionary authority to interpret plan terms); *Varity*, 516 U.S. at 512 ("ERISA specifically

provides a remedy for breaches of fiduciary duty with respect to the *interpretation of plan*

*documents* . . . that runs directly to the injured beneficiary[:] § 502(a)(1)(B).") (citing *Mass. Mut.*

*Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *Winkler v. Metro. Life Ins. Co.*, 340 F. Supp.

2d 411, 414 (S.D.N.Y. 2004) ("crystal clear" that entity with discretionary authority to interpret

plan terms is a fiduciary). And, further, as noted above, plan interpretation is so central to an

ERISA fiduciary's responsibility that the statute makes faithfulness to plan terms a distinct

fiduciary duty. 29 U.S.C. § 1104(a)(1)(D) (an ERISA "fiduciary shall discharge his duties with

respect to a plan solely in the interest of the participants and beneficiaries and . . . *in accordance*

*with the documents and instruments governing the plan* . . . .") (emphasis added). This is why

---

[4] Throughout its Motion to Dismiss, Anthem describes its adopted guidelines as "industry standard." Mot. at 4, 7. The Amended Complaint, however, does not allege the Guidelines at issue were "industry standard," and the only reasonable inference that could be drawn from the allegations is that the Guidelines were far from any "industry standard." *See, e.g.*, Am. Compl. ¶¶ 28–33. At the motion to dismiss stage, Plaintiffs' allegations must be taken as true and all reasonable inferences must be drawn in Plaintiffs' favor. *See Iqbal*, 556 U.S. at 678. The Court should ignore Anthem's "industry standard" descriptor.

courts regularly allow cases to proceed against claims administrators—like Anthem—who apply overly restrictive guidelines. *See, e.g.*, *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2020 WL 6469764, at *13 (N.D. Cal. Nov. 3, 2020); *Des Roches*, 320 F.R.D. at 491.

The cases Anthem cites do not support its cramped interpretation of its fiduciary duties. Anthem does not cite to a single decision—in this circuit or elsewhere—holding that adopting *guidelines interpreting plan terms* is a "business activity," let alone any cases holding that adopting guidelines interpreting plan terms is *not* a fiduciary act. Instead, Anthem relies almost exclusively on utterly irrelevant cases holding that a plan sponsor's decisions about plan design are not fiduciary acts[5] or that a plan sponsor's business activities are not fiduciary functions when they are unrelated to plan administration.[6] But this case is not about plan design. To the contrary, the plan terms are set, and Anthem's job is to interpret and apply them when determining whether to approve benefits. Am. Compl. ¶ 18. Nor does the Amended Complaint allege or support an inference that the guidelines themselves are plan terms—rather, Plaintiffs allege the guidelines are tools Anthem uses to standardize its personnel's interpretation of a plan

---

[5] *See* Mot. at 9–10 (citing *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000)); *id.* at 10 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)); *id.* at 10–11 (citing *Janese v. Fay*, 692 F.3d 221, 227 (2d Cir. 2012)); *id* at 12 (citing *Weissman v. United Healthcare Ins. Co.*, No. 1:19-cv-10580-ADB, 2020 WL 1446734, at *6 (D. Mass. Mar. 25, 2020)).

[6] *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361 (2d Cir. 2014) (cited in Mot. at 9, 10) (employer's election to make its contributions to the plan in company stock instead of cash was not a fiduciary act); *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) (plan sponsor's decision to spin off a division of the company, and its pension plan, was a business decision). Anthem's reliance on the *Express Scripts* case is also inapposite for this reason. That decision arose from Anthem's sale of three of its subsidiaries to Express Scripts, a pharmacy benefits manager ("PBM"). *Express Scripts*, 837 F. App'x at 47. To obtain a better price on the assets, and as a condition precedent to the asset sale, Anthem signed a PBM Agreement that allowed Express Scripts to charge high prices for prescription medications when administering Anthem plans. *Id.* The Court concluded that "Anthem did not act as an ERISA fiduciary when it entered into the [asset sale] and PBM Agreements," relying on its prior decision in *Flanigan* that "the decision to sell a corporate asset is not a fiduciary decision—even if the sale affects an ERISA plan." *Id.* at 48–49 (citing *Flanigan*, 242 F.3d at 88).

term that is common to multiple plans. *Id.* ¶¶ 17–20, 66, 69, 97.[7] And this case is also not about the corporate decisions of a plan sponsor because Anthem is a third-party plan administrator, *not* a plan sponsor. *Id.* ¶¶ 3–5. Anthem's cited cases, therefore, do not support its argument here.

  The few cases Anthem cites that even relate to the activities of third-party administrators only serve to demonstrate that Anthem's conduct alleged here—adopting a standardized interpretation of a term that appears in multiple plans for the purpose of using that interpretation to make benefit determinations—is a far cry from the functions courts have considered "business activities" falling outside ERISA's definition of fiduciary acts. In the *American Psychiatric Association* case, for example, the district court concluded that Anthem's methodology for setting provider reimbursement rates and policies imposing onerous administrative requirements on providers submitting claims did not involve the "use 'of discretion in construing and applying the provisions of [their] group health plan[s] and assessing a participant's entitlement to benefits' under the terms of such plans," and therefore were not fiduciary acts. *Am. Psychiatric Ass'n v. Anthem Health Plans*, 50 F. Supp. 3d 157, 160, 169 (D. Conn. 2014) (alterations in original). Similarly, in *DeLuca*, the question was whether an administrator engaged in a fiduciary act when it agreed to pay certain rates to in-network hospitals. *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 745–46 (6th Cir. 2010). The Court distinguished between the administrator's fiduciary functions ("act[ing] as the administrator and claims-processing agent for the plan") and its non-fiduciary functions (contracting with providers to create a network that could be offered

---

[7] The *Jones* case does not mandate a different outcome. *See Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999) (cited in Mot. at 12). That case was decided on a motion for summary judgment, *id.* at 1291–92, presumably based on a complete record. The court's conclusion that the criteria therein were "part of" the specific plan at issue does not purport to state a general rule and certainly does not justify dismissal of Plaintiffs' Amended Complaint, which alleges that Anthem adopted its guidelines to *interpret* the plan terms, Am. Compl. ¶¶ 18, 66, 69, 97 and that those guidelines *conflicted* with plan terms, *id.* ¶¶ 1, 66, 103, 105. Those allegations, taken as true, can only support the reasonable inference that Anthem's guidelines were *not* plan terms.

to plans that hire the administrator) and held that the plaintiff's claims attacked only the latter. *Id.* at 746–47. Here, in stark contrast, Plaintiffs challenge conduct that the *DeLuca* court plainly considered to be fiduciary in nature—determining what plan terms mean for the purpose of adjudicating claims.[8]

What Anthem is really arguing is that, even though Anthem concedes that it owes fiduciary duties when it interprets plan terms in the context of a *single* person, it ceases to owe any fiduciary duties as soon as it performs that same function for more than one person at a time. Yet that is the *only* way Anthem interprets the particular plan term at issue here: by adopting one set of guidelines that are standardized across all plans. *See* Am. Compl. ¶¶ 7, 19–21. Not one of Anthem's cases even comes close to standing for the proposition that an ERISA fiduciary like Anthem could immunize itself from its statutorily-imposed fiduciary duties simply by adopting standardized interpretations of plan language—here, medical necessity—that apply to multiple plans. Such a perverse rule runs headlong into the very purpose of ERISA's functional test for fiduciary status: to *expand* the universe of people and entities subject to fiduciary duties, not to contract it, so as to provide ERISA's beneficiaries with maximal protection.

### C.    Anthem is a Proper Defendant for Plaintiff Sanchez's Claims Under Section 1132(a)(1)(B).

Anthem again ignores ERISA's plain language and relevant case law when it argues, Mot. at 13–15, that the Court should dismiss Plaintiff Sanchez's claims under 29 U.S.C. § 1132(a)(1)(B), alleged in Counts I and II, because of a purported rule that claims

---

[8] The *Johns* case, *see* Mot. at 12 (citing *Johns v. Blue Cross Blue Shield of Mich.*, No. 2:08-cv-12272, 2009 WL 646636, at *4 (E.D. Mich. Mar. 10, 2009)), is inapposite for a different reason: the district court did not find that the administrator's "planwide policy and procedure" was a "business decision" or non-fiduciary act. 2009 WL 646636, at *4. Rather, the court found the claim was a "repackaged" denial-of-benefits claim, and required the plaintiff to proceed with his claim for an award of benefits only under 29 U.S.C. § 1132(a)(1)(B), and not § (a)(3). *Id.*

administrators "cannot be sued" under ERISA unless they have "absolute and final discretion to deny benefits." Mot. at 14. Anthem's self-serving claims administrator-immunity rule has no support in ERISA or the cases interpreting it.

ERISA specifies who may *bring* an action under sections 1132(a)(1)(B) and (a)(3)—expressly permitting suits by plan participants like Karyn Sanchez—but it places no limit on the universe of proper ERISA *defendants* for such claims. 29 U.S.C. § 1132(a)(1)(B) & (a)(3). The Supreme Court has cautioned lower courts against inventing such limits in contravention of the statutory text. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc*., 530 U.S. 238, 246 (2000) (explaining that where a subsection of § 1132(a) places "no limit . . . on the universe of possible defendants," the courts should not impose any such limit). The Second Circuit, accordingly, relied on *Harris Trust* in holding that the statute "does not preclude suits against claims administrators" and rejecting the argument that only a plan is can be a proper defendant in a suit seeking an award of benefits under § 1132(a)(1)(B). *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015) ("*NYSPA*") (reversing denial of motion to dismiss and holding, "in accord with six of our sister circuits," that claims administrator defendant could be sued for benefits under 29 U.S.C. § 1132(a)(1)(B)).

The Second Circuit also concluded that a claims administrator can be a "proper defendant" for a claim under § 1132(a)(3), following the Supreme Court's explanation in *Harris Trust* that § (a)(3) "allows a plaintiff to bring suit based on the 'act or practice which violates any provision of ERISA Title I.'" *NYSPA*, 798 F.3d at 133. As explained above, Anthem is a fiduciary that owes duties explicitly enumerated in ERISA. *See* 29 U.S.C. § 1104. Thus, any breach of those fiduciary duties also violates ERISA. Therefore, under the express language of

11

the statute and controlling Second Circuit authority, Anthem can be sued for its misconduct. 29 U.S.C. § 1132(a)(3) (permitting suits to enjoin *any act or practice* which violates ERISA).

Anthem misreads *NYSPA* as suggesting a claims administrator is immune to all ERISA liability whenever a self-funded plan allows for an *optional* external appeal. Mot. at 14–15.[9] The case holds no such thing, however. It is true that in *NYSPA*, the Second Circuit found that the claims administrator, United, "enjoyed 'sole and absolute discretion' to deny benefits and make 'final and binding' decisions as to appeals of those denials." 798 F.3d at 132. But tellingly, the court also took pains to note that—like Plaintiff Sanchez's Plan—the named plaintiff's plan provided for an optional "external review." *NYSPA*, 798 F.3d at 129 n.4. In any event, a finding that total control exists in one case is a far cry from a ruling requiring that same level of control in *all* cases—a ruling the Second Circuit expressly refused to make in *NYSPA*, as even Anthem is forced to admit. *See* 798 F.3d at 132 n.5 ("We need not and do not decide whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under § 502(a)(1)(B)."); Mot. at 14 n.6. Moreover, the court was careful to state its holding in terms of the nature of the plaintiffs' claim, specifying that United was "an appropriate defendant in a § 502(a)(1)(B) action for benefits." *Id*. at 132. And the court's reasoning in reversing dismissal of the § (a)(3) claim makes no mention at all of "total control" or whether decisions are "final and binding." 798 F.3d at 133. *NYSPA*, therefore, does not undermine ERISA's plain language or otherwise limit the universe of ERISA defendants.

---

[9] Anthem implicitly concedes that it is a "proper defendant" under § 1132(a)(1)(B) with respect to fully-insured plans, where Anthem bears the responsibility for paying the claims for which it approves coverage. Mot. at 13. For that reason, Anthem does not seek to dismiss the other Plaintiffs' § (a)(1)(B) claims on this ground.

Nor does *NYSPA* provide any support for Anthem's argument that it is immune from suit because it lacked "total control" over Ms. Sanchez's benefits. First, the "total control" doctrine has no application where, as here, the plaintiff does not seek court-ordered benefits. As *NYSPA*'s reasoning suggests, the total control doctrine arose from an assumption that the plan needed to be a defendant if the court were to order the payment of benefits pursuant to § (a)(1)(B), because the plan was generally responsible for making benefit payments. Thus, it was "logical" to limit § (a)(1)(B) defendants to the plan itself when the plaintiff sought court-awarded benefits. That logical limit did not apply when a claims administrator had "total control" over whether benefits would be paid, which is why *NYSPA* found that such a claims administrator could be sued "in a § 502(a)(1)(B) action *for benefits*." 798 F.3d at 132 (emphasis added). For that reason, in the cases Anthem cites where district courts apply *NYSPA*'s "total control" language to hold the ERISA plan itself, and not the claims administrator, is the proper defendant, the plaintiffs were indeed seeking court-ordered benefits. *See, e.g.*, *Moses v. Revlon Inc.*, No. 15-CV-4144 (RJS), 2016 WL 4371744, at *1 (S.D.N.Y. Aug. 11, 2016), *aff'd*, 691 F. App'x 16 (2d Cir. 2017) (seeking benefits owed under pension plan); *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608 (N.D.N.Y. 2016) (seeking benefits owed under health plan); *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (same); *Bushell v. UnitedHealth Grp. Inc.*, No. 17-CV-2021 (JPO), 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (same). Here, because Plaintiffs do not seek court-ordered benefits, and instead seek injunctive and declaratory relief directed to the way *Anthem* interprets the terms of the plans, the "total control" doctrine does not apply at all. Stated differently, there is nothing

illogical about suing Anthem to challenge its own misconduct, particularly where the remedies sought do not include a court-ordered payment of benefits.[10]

Second, even if *NYSPA* did stand for the proposition that a claims administrator with less than "total control" over benefit determinations cannot be sued at all—which it does not— Plaintiffs have plausibly alleged that Anthem had the level of control found sufficient in *NYSPA*. *See* Am. Compl. ¶¶ 80–81. And the Sanchez Plan, which Anthem itself submitted to the Court, makes Anthem's "total control" over the decisions at issue here abundantly clear:

> Anthem has complete discretion to interpret this Benefit Booklet. The Claims Administrator's determination shall be final and conclusive and may include, without limitation, a determination of whether the services, treatment, or supplies are Medically Necessary . . . .

Mot., Ex. 1 at 84; *see also id*. at 2 ("Anthem is the Claims Administrator . . ."). Under the terms of the Sanchez Plan, Anthem made initial benefits determinations and handled the initial "*mandatory* level of appeal," *id.* at 70 (emphasis added), which the Plan explicitly deemed "final and conclusive," *id.* at 84.

After the mandatory level of appeal, Plaintiff Sanchez had the *option* to pursue an additional "*voluntary* second level appeal," *id.* at 71 (emphasis added), but she was not required to do so in order to exhaust her administrative appeals under ERISA. Thus, her option to pursue additional, voluntary, appeals did not undermine Anthem's authority and control under the plan to make discretionary benefit determinations and interpret plan language. Nor could the

---

[10] In any event, it is now the law of the land under the Affordable Care Act that *all* non-grandfathered, employer-sponsored plans (like those of all the Plaintiffs in this case) have to offer the option of an external appeal. 42 U.S.C. § 300gg-19(b); 29 U.S.C. § 1185d. Therefore, if the Court accepted Anthem's argument here, *every* claims administrator would be immune from liability under ERISA. That outcome cannot be squared with ERISA's plain language, 29 U.S.C. § 1132(a), or with the statute's purpose of protecting "the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . , and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

voluntary appeal option immunize Anthem from liability for its own fiduciary breaches. Indeed, in *NYSPA*, the court noted that the plaintiff's plan—like the Sanchez Plan—provided for an optional "external review program," but this did not preclude the Second Circuit from finding "total control." *NYSPA*, 798 F.3d at 129 n.4, 132. Anthem, therefore, had (and has) the discretion and authority under the Sanchez Plan to make final benefits decisions under ERISA and is a proper defendant for Plaintiff Sanchez's claims.

> **D.    The Court Should Not Dismiss Counts III and IV because Statutory and Case Law Explicitly Allow for Alternative Pleading.**

Anthem's next argument—that Counts III and IV of the Amended Complaint should be dismissed because they are purportedly duplicative of Plaintiffs' claims under 29 U.S.C. § 1132(a)(1)(B)—again flies in the face of controlling law.

First, Anthem's argument ignores Federal Rule of Civil Procedure 8 which explicitly allows alternative pleading with respect to the relief sought. *See* Fed. R. Civ. P. 8(a)(3). Rule 8 recognizes that neither the parties nor the Court can fairly determine at the outset of a case exactly what remedies should be awarded if the plaintiff ultimately prevails. This is all the more true with respect to claims under ERISA, which explicitly allows the Court to award equitable relief whenever it is "appropriate." *See* 29 U.S.C. § 1132(a)(3)(B). Indeed, it is for this reason that the Second Circuit in *NYSPA* explicitly rejected the argument Anthem makes here, holding that, at the motion to dismiss stage, "it is too early to tell if [plaintiff's] claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B)." 798 F.3d at 134. *See also Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) ("[t]o dismiss an ERISA plaintiff's § 1132(a)(3) claim as duplicative at the pleading stage . . . would, in effect, require the plaintiff to elect a legal theory and would, therefore, violate [the Federal Rules of Civil Procedure].").

Second, Anthem's argument misreads *Varity* and the Second Circuit's decision in *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006). Mot. at 16–18. Anthem first posits that *Varity* stands for the proposition that Plaintiffs cannot bring equitable claims where an adequate legal remedy is available. *Id.* at 16. The main question presented in *Varity*, however, was whether an individual, rather than a plan, could remedy a breach of fiduciary duty by obtaining "other appropriate equitable relief" under § (a)(3)(B), which the court answered in the affirmative. 516 U.S. at 495, 515. The question of whether ERISA permits a plaintiff, at the *pleading* stage, to simultaneously allege entitlement to relief under different subsections of § 1132(a) was not before the court. The *Varity* plaintiffs had no § (a)(1)(B) cause of action because the administrator had tricked them into leaving the plan. *Id.* at 514–15. Nor did the *Varity* plaintiffs seek injunctive relief under § (a)(3)(A). They invoked only one provision: § (a)(3)(B). *Varity* thus says nothing at all about pleading in the alternative, and does not support Anthem's argument here.

*Frommert*, likewise, does not hold that ERISA plaintiffs cannot plead their claims in the alternative. In *Frommert*, because the plaintiffs sought "money damages through recalculation of their pension benefits, the 'vehicle' for such relief [was] a judgment declaring that the phantom account [was] prohibited by ERISA and enjoining its application in calculating the benefits of any Plan participants." 433 F.3d at 269. The court held that because the relief plaintiffs sought "[fell] comfortably within the scope of § 502(a)(1)(B)," equitable relief was not available. *Id.* at 270. Because the plaintiffs in that case similarly invoked only one ERISA provision—29 U.S.C. § 1132(a)(3)—the court did not (and indeed could not) address whether plaintiffs could plead in the alternative.

Here, in Counts III and IV, Plaintiffs explicitly state the counts are brought "only to the extent that the Court finds that the injunctive [and equitable] relief available pursuant to 29 U.S.C. § 1132(a)(1)(B) is inadequate to remedy the violations alleged in Counts I and/or II." Am. Compl. ¶¶ 108, 112. Unlike the cases Anthem cites, here, Plaintiffs are pleading their claims in the alternative, which is explicitly permitted under Rule 8 and the cases construing it. Anthem has not (and cannot) demonstrate at this nascent stage of the litigation, as a matter of law, that Plaintiffs can obtain adequate relief solely under (a)(1)(B). Indeed, Anthem itself urges the Court to dismiss Plaintiff Sanchez's (a)(1)(B) claims, Mot. at 13–16, but if the Court did so, the (a)(3) claim would not be duplicative of anything. Even if Anthem were correct that Ms. Sanchez has no (a)(1)(B) claim—which it is not—that argument would only mean that her (a)(3) claims must be permitted to survive. The Supreme Court's decision in *Cigna Corp. v. Amara* mandates this outcome. 563 U.S. 421, 440 (2011). In that case, having found that the plaintiffs had no (a)(1)(B) claim because the terms of the plan precluded relief, the Court nevertheless found that the district court could reform the plans under (a)(3) and *then* order benefits under (a)(1)(B). *Id.* at 441. *Amara* thus shows two things: first, that courts can order a *combination* of relief under ERISA's remedial provisions—thus strongly suggesting that a plaintiff must be allowed to plead under multiple provisions—and second, that the failure of an (a)(1)(B) claim does not end the inquiry under ERISA. Controlling Supreme Court precedent, therefore, invalidates Anthem's argument here. Accordingly, Anthem has provided no valid ground for dismissing Plaintiffs' alternative claims.

**E.   There are no "Substance Abuse Claims" to Dismiss—Only Class Certification Allegations, Which the Court Should Address After Discovery.**

As a last effort to get some piece of this case dismissed, Anthem argues Plaintiffs' "substance use disorder claims" must be dismissed. Mot. at 18. This argument is entirely

misplaced, however, because Plaintiffs did not assert any "substance abuse claims." Nor do they assert "mental health claims." Instead, Plaintiffs' *claims* are that Anthem breached its fiduciary duties and violated ERISA by adopting Guidelines that conflicted with Plaintiffs' plans and using them to deny Plaintiffs' requests for coverage. Am. Compl. ¶¶ 1–2, 93–106. The Court can assess whether Plaintiffs—as individuals—have plausibly stated those claims without evaluating any allegations relating to substance use disorders.

What Anthem is really asking the Court to do is strike portions of Plaintiffs' complaint so as to preclude discovery about whether Plaintiffs can adequately represent a portion of the class. Courts in this Circuit, however, strongly disfavor motions to strike, *Barrom v. Roux Labs.*, 3 F.R.D. 175, 175 (S.D.N.Y. 1942), and such motions are "rarely successful." *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 292–93 (S.D.N.Y. 2015). Courts, moreover, are particularly unwilling to strike allegations in the class action context "where such a motion 'requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Id.* Similarly, a motion to strike will not be granted "unless it can be shown that no evidence in support of the allegation would be admissible." *N.Y. Islanders Hockey Club, LLP v. Comerica Bank—Tex.*, 71 F. Supp. 2d 108, 120 (E.D.N.Y. 1999). Anthem makes no effort to meet this standard, nor could it. The Court should reject this inappropriate attempt to avoid legitimate discovery and circumvent the Court's required analysis of the proposed class under Rule 23—which can only occur upon a fully-developed record. *See, e.g.*, *Bank v. R & D Strategic Sols., LLC*, No. 12-CV-01368 (DLI) (VMS), 2013 WL 1171108, at *1 (E.D.N.Y. Mar. 20, 2013) ("[T]he Court declines to address Defendant's arguments concerning the adequacy of

representation requirement at this stage, as those arguments are more properly considered upon a motion for class certification.").

Even if the sufficiency of Plaintiffs' class certification allegations were properly before the Court on a Rule 12(b)(6) motion to dismiss—which it is not—the Amended Complaint plausibly alleges that individuals with both mental health diagnoses and substance use disorders—often collectively referred to as "behavioral health" conditions—are similarly situated to Plaintiffs. That is, the Amended Complaint plausibly alleges that plan participants with all kinds of behavioral health diagnoses were injured in the same way as Plaintiffs by Anthem's fiduciary breaches and ERISA violations.

For example, Plaintiffs allege that Anthem applies a company-wide definition of "medically necessary" for all plans, which requires services to be "in accordance with generally accepted standards of medical practice." Am. Compl. ¶ 18. They allege that Anthem initially developed its own criteria for making medical necessity determinations for all plans, *id.* ¶¶ 19–20, then licensed the MCG Criteria for the same purpose, *id.* ¶ 21, and that Anthem UM used those criteria in making benefit determinations, *id.* ¶ 22. Plaintiffs further allege that MCG "develops *behavioral health* guidelines that it licenses to benefit administrators, *including Defendants . . . ,*" *id.* ¶ 39 (emphasis added), that are in contrast to the generally accepted standards of care (and its approach with respect to medical/surgical benefits).

Plaintiffs further allege that the same generally accepted standards of care for making patient placement decisions apply to both mental health and substance use disorders, *id.* ¶¶ 23, 25, but that Anthem's internally-created criteria for mental health residential treatment were more restrictive than those standards in multiple ways. *Id.* ¶¶ 29–38. Plaintiffs allege that the MCG RTC Guidelines applicable to mental health residential treatment were, likewise, much

more restrictive than generally accepted standards. *Id.* ¶¶ 41, 43–52, stating, "[i]n sum, on their face, the MCG RTC Guidelines provide that residential behavioral health treatment is only medically necessary for crisis stabilization or other circumstances in which a patient is suffering from acute symptoms." *Id.* ¶ 52. Plaintiffs further allege that MCG's guidelines reflect its position that intermediate levels of care (i.e., residential treatment) for "*behavioral health* services" are designed only to "address acute symptoms or provide crisis stabilization." *Id.* ¶¶ 57–60 (emphasis added). Plaintiffs allege that Defendants have a financial incentive to avoid paying benefits for residential treatment for behavioral health conditions, *id.* ¶ 67, and that clinical guidelines are the primary tools Anthem uses to ration access to "behavioral healthcare, including expensive residential treatment . . . " *Id.* ¶ 68. All of those allegations, together, give rise to a reasonable inference that the internal Anthem criteria and the MCG criteria for residential treatment of substance use disorders also flout the generally accepted standards, just like the criteria for mental health residential treatment.[11] At a bare minimum, these allegations are sufficient to nudge the class allegations "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and justify class certification discovery—which will allow the Court to determine, based on a full record, whether Plaintiffs are adequate representatives for putative class members with substance use disorders. *See Iqbal*, 556 U.S. at 678 (a complaint should not be dismissed where it contains "sufficient factual matter, accepted as true, to 'state a claim to

---

[11] The contrary inference is not reasonable and is not supported by the plausible allegations in the Complaint—namely, that despite Anthem's financial incentive to limit payment of benefits for expensive residential treatment services, and despite MCG's published, admitted view that residential treatment for behavioral health conditions is limited to crisis stabilization and alleviating acute symptoms, and despite the fact that both Anthem and MCG developed criteria for residential treatment of *mental illnesses* that are wholly inconsistent with generally accepted standards of care, both Anthem and MCG, for some unknown reason, created criteria for residential treatment of *substance use disorders* that complied with generally accepted standards.

relief that is plausible on its face.'"). The Court, therefore, should not "dismiss" or strike the substance use disorder allegations.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Anthem, Inc. and Anthem UM Services, Inc.'s Partial Motion to Dismiss should be denied.

Dated: April 7, 2021                          Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By: */s/ Caroline E. Reynolds*

Caroline E. Reynolds (*pro hac vice*)
1800 M Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106
creynolds@zuckerman.com

*Counsel for Plaintiffs and the Putative Class*