**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARISSA COLLINS, on her own behalf, and on behalf of all others similarly situated, JAMES BURNETT, on behalf of his son, and on behalf of all others similarly situated, and KARYN SANCHEZ, on behalf of her minor son and all others similarly situated,

Plaintiffs,

v.

ANTHEM, INC. and ANTHEM UM SERVICES, INC.,

Defendants.

Civil Action No. 2:20-cv-01969-FB-SIL

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................iii

I.      INTRODUCTION............................................................................ 1

II.     SUMMARY OF THE CASE.......................................................... 2

   A.   PLAINTIFFS' CLAIMS ............................................................. 2

   B.   FIRST ATTEMPT TO MEDIATE ............................................. 3

   C.   MOTION TO DISMISS ............................................................ 4

   D.   DISCOVERY ........................................................................... 4

   E.   CLASS CERTIFICATION ........................................................ 5

   F.   SETTLEMENT NEGOTIATIONS ............................................ 6

III.    DESCRIPTION OF THE SETTLEMENT ................................... 7

   A.   THE SETTLEMENT PAYMENT ............................................. 7

   B.   RELEASE OF CERTAIN CLAIMS AGAINST DEFENDANTS ............... 7

   C.   CLASS NOTICE AND OPT-OUT RIGHTS ............................ 8

   D.   OTHER PROVISIONS ............................................................. 8

      1.   Class List and Class Claims Data ..................................... 9

      2.   Incentive Awards for the Named Plaintiffs....................... 9

      3.   Attorneys' Fees and Expenses .......................................... 9

   E.   DESCRIPTION OF THE PLAN OF ALLOCATION .................... 10

   F.   APPOINTMENT OF SETTLEMENT ADMINISTRATOR ............ 12

IV.     THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL. ................................ 12

   A.   LEGAL STANDARD FOR PRELIMINARY APPROVAL ............ 12

   B.   THE PROCEDURAL FACTORS SUPPORT PRELIMINARY APPROVAL. ............... 14

      1.   The Class Representatives and Class Counsel Have Adequately Represented the Class. ................................ 14

2.    The Settlement was Negotiated at Arm's Length. ................................................ 16

C.    THE SUBSTANTIVE FACTORS SUPPORT PRELIMINARY APPROVAL ........................................ 17

1.    The Relief Provided for the Class is Adequate. ................................................ 17

2.    The Settlement Treats Class Members Equitably Relative to Each Other. .............. 22

**V.    THE NOTICE PLAN SATISFIES RULE 23 AND DUE PROCESS** ....................... **23**

**VI.    PROPOSED SCHEDULE** ................................................................................. **24**

**VII.    CONCLUSION** ............................................................................................. **25**

**CERTIFICATE OF COMPLIANCE** ....................................................................... **27**

# TABLE OF AUTHORITIES

## CASES

*Charron v. Pinnacle Grp. N.Y. LLC*,
 874 F. Supp. 2d 179 (S.D.N.Y. 2012).................................................................................. 15, 18

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)........................................................ 13, 14, 17, 18, 21, 22

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)....................................................................................... 17

*Dover v. British Airways, PLC (UK)*,
 323 F. Supp. 3d 338 (E.D.N.Y. 2018) ..................................................................... 14

*Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
 925 F.3d 63 (2d Cir. 2019)........................................................................................ 21

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)........................................................................................ 13

*Hunter v. Blue Ridge Bankshares, Inc.*,
 No. 23-CV-8944, 2025 WL 1649323 (E.D.N.Y. June 11, 2025) ................................ 17, 18, 23

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
 No. 20-CV-5917 (TAM), 2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023) .................... 15, 18, 23

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019) ..................................... 12, 13, 14, 15, 17, 18, 20, 21, 22, 23, 24

*In re Penthouse Exec. Club Comp. Litig.*,
 No. 10-CV-1145 (KMW), 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ............................. 17

*In re Platinum & Palladium Commodities Litig.*,
 No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014)................................. 13

*In re WorldCom, Inc. Secs. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................... 20

*Kobor v. Skidmore Coll.*,
 1:23-CV-1392 (MAD/DJS), 2025 WL 949745 (N.D.N.Y. Mar. 28, 2025) ............................ 12

*Kohari v. MetLife Group, Inc.*,
 No. 21-cv-6146 (KHP), 2025 WL 100898 (S.D.N.Y. Jan. 15, 2025) ...................................... 16

*Kurtz v. Kimberly-Clark Corp.*,
 No. 14CV1142PKCRML, 2024 WL 184375 (E.D.N.Y. Jan. 17, 2024) ................................. 22

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
  No. 15-cv-441 (MAD), 2016 WL 3406111 (N.D.N.Y. June 17, 2016) ................................. 21

*Meredith Corp. v. SESAC, LLC*,
  87 F.Supp.3d 650 (S.D.N.Y. 2015) ....................................................................................... 22

*Mikhlin v. Oasmia Pharm. AB*,
  No. 19CV4349(NGG)(RER), 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ........................... 21

*Moses v. New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ................................................................... 13, 21, 22, 23

*Nnebe v. Daus*,
  No. 06-cv-4991 (RJS), 2025 WL 1333425 (S.D.N.Y. May 7, 2025) ...................................... 12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................................ 24

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) .............................................................................................. 19

*Rosenfeld v. Lenich*,
  2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ........................................................................ 18

*Sykes v. Harris*,
  No. 09-CV-8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ........................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................................ 14, 21

*Wit v. United Behavioral Health*,
  79 F.4th 1068 (9th Cir. 2023) ............................................................................................. 19

**STATUTES**

Employee Retirement Income Security Act of 1974,
  29 U.S.C. §§ 1001 - 1764 ...................................................................................................... 1

Mental Health Parity and Addiction Equity Act of 2008,
  29 U.S.C. § 1185a .................................................................................................................. 1

**RULES**

45 C.F.R. § 164.512(e)(1)(i) ...................................................................................................... 9

Federal Rule of Civil Procedure 23(c)(2)(B) ............................................................................ 23

Federal Rule of Civil Procedure 23(e) ............................................................... 1, 13, 17, 20, 22

## I.    **INTRODUCTION**

After more than four years of hard-fought litigation and extensive arms-length negotiations, Plaintiffs Marissa Collins, James Burnett, Karyn Sanchez, and A.I.[1] (collectively, the "Named Plaintiffs" or "Class Representatives") and Defendants Anthem, Inc. and Anthem UM Services, Inc. (collectively, "Anthem"), have reached an agreement to resolve this certified class action (the "Settlement").

The Settlement—which resolves the Plaintiffs' claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 - 1764 ("ERISA") and the Mental Health Parity and Addiction Equity Act of 2008, 29 U.S.C. § 1185a (the "Parity Act")—is very favorable for the certified Class,[2] and is in all respects fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiffs seek an order granting preliminary approval of the Settlement, along with the plan of allocation; approving the proposed schedule concerning notice, opt-out, and objection deadlines; appointing Simpluris as the settlement administrator; and setting a fairness hearing for final approval of the Settlement.

The Settlement, if approved, will provide meaningful relief to nearly 19,000 people whose requests for health benefits for residential treatment of their, or their dependents', mental health conditions or substance use disorders were denied by Anthem pursuant to the medical necessity criteria Plaintiffs challenged in this case (hereafter, the "Challenged Guidelines"). The Settlement will create a common fund of $12.875 million. Class Members who paid out of pocket for residential treatment services after Anthem denied coverage will have an opportunity to submit

---

[1] On June 21, 2022, this Court granted Intervenor Plaintiff A.I.'s motion to proceed anonymously in this litigation and to seal or redact personally identifying information pertaining to himself and his minor daughter. *See* ECF Nos. 55, 58 and Electronic Order dated June 21, 2022.

[2] As used in this Memorandum, the terms "Class" and "Class Member" have the same meaning as in the parties' Settlement Agreement, attached hereto as Exhibit 1. *See* Ex. 1 ¶¶ 13(d), (g).

claims for reimbursement from the common fund, on a pro rata basis, of a portion of those payments. All other Class Members will receive a nominal payment from the common fund, without the need to submit a claim. In exchange for this significant monetary relief, the Class Members will provide Anthem with a release that is reasonably tailored to the claims asserted in this case. Given the risks of litigation and the time value of money, the Settlement is highly favorable for the Class Members.

For the reasons presented herein, the Court should preliminarily approve the Settlement, including the plan of allocation; find that the proposed notice plan satisfies the requirements of Rule 23 and due process, and order that notice of the Settlement be given to the Class Members; appoint Simpluris as settlement administrator; and set a fairness hearing for final approval of the Settlement.

## II.     SUMMARY OF THE CASE

### A.     Plaintiffs' Claims

The Named Plaintiffs and the other members of the Class are participants in or beneficiaries of employer-sponsored health benefit plans governed by ERISA. As the administrator of the plans, Anthem denied the Class Members' requests for coverage of residential treatment for their mental health conditions and/or substance use disorders because it determined that the treatment was not "medically necessary," based on its standardized, company-wide medical necessity criteria for that level of care (i.e., the Challenged Guidelines).

Plaintiffs allege that the denials violated ERISA because the Challenged Guidelines were inconsistent with the plans' written terms. Am. Complaint ¶¶ 1, 103, ECF No. 29. While the plans provided that "medically necessary" healthcare services must be consistent with generally accepted standards of care, Plaintiffs allege that the Challenged Guidelines were more restrictive than those standards, effectively imposing new limitations on the behavioral health coverage

offered by the plans and decreasing the number and value of claims otherwise covered by the plans. *Id*. ¶¶ 1, 17, 28-52.

Plaintiffs further allege that the Challenged Guidelines violated the Parity Act because they were more restrictive than the criteria Anthem used to evaluate the medical necessity of residential treatment for medical conditions. *Id.* ¶¶ 2, 53-63. Specifically, Plaintiffs allege that while the Challenged Guidelines condition coverage of behavioral health residential treatment on the presence of acute symptoms, Anthem's Guidelines for medical conditions recognize that residential treatment is a sub-acute level of care. *Id.* ¶¶ 53-63. Anthem vigorously denied all of these allegations.

Plaintiffs asserted three claims for relief: first, that Anthem breached its fiduciary duties to the Class Members and improperly narrowed the scope of coverage available under the Plans by creating, adopting, and using overly restrictive Guidelines, *id*. ¶¶ 64-68, 70, 95-99; second, that Anthem's denials of Class Members' requests for coverage were arbitrary and capricious because they were based on criteria that were inconsistent with the relevant plan term, *id*. ¶¶ 69, 103, 105; and third, that Anthem's adoption and use of medical necessity criteria that were more restrictive for mental health and substance use disorder treatment than for medical/surgical treatment violated the Parity Act. *Id*. ¶¶ 103-04. To remedy the alleged misconduct, Plaintiffs sought declaratory and injunctive relief to establish the illegality of Anthem's conduct, mandate changes to Anthem's practices going forward, and require Anthem to reprocess previously-denied requests for coverage pursuant to criteria that comply with the Plans. *Id*. ¶¶ 109-10, 113-14; *id*. at 34-35. Anthem denied that Plaintiffs were entitled to their requested relief.

## B.    First Attempt to Mediate

At the outset of the case, Anthem sought permission to file a motion to dismiss. *See* ECF No. 14. At the pre-motion conference, however, the parties agreed to attempt to resolve the case

through mediation. *See Minute Order* (Oct. 14, 2020). The parties retained a private mediator, exchanged mediation statements, and participated by videoconference in two full-day mediation sessions. At that early stage in the case, however, the parties were unable to reach a resolution.

### C.    Motion to Dismiss

Plaintiffs filed an Amended Complaint on February 1, 2021. ECF No. 29. Anthem moved to dismiss the complaint, in part, on various grounds. *See* ECF No. 39. Following full briefing by the parties, the Court denied Anthem's motion on February 24, 2022. ECF No. 50. Thereafter, Anthem filed an Answer, in which it denied all liability and asserted dozens of affirmative defenses. ECF No. 51.

### D.    Discovery

The parties conducted extensive fact discovery on class and merits issues from February 26, 2021 through February 21, 2024. Reynolds Decl. ¶¶ 2-8.[3] Plaintiffs served on Defendants three sets of requests for production of documents ("RFPs"), two sets of interrogatories, and one set of requests for admission. *Id.* ¶ 2. Defendants produced, and Plaintiffs reviewed and analyzed, multiple sets of data and more than 162,000 pages of documents responsive to Plaintiffs' RFPs— including substantial documentation relating to the parties' agreed-upon Sample consisting of 380 Class Members' denials. *Id.* ¶¶ 3, 5. In addition, Anthem produced documents and information on topics including its internal processes and practices with respect to medical necessity determinations, its adoption and use of the Guidelines at issue in the case, and its adoption and use of medical necessity criteria for comparable medical services. *Id.* ¶ 4. Plaintiffs took the Rule

---

[3] Anthem initially sought a stay of discovery while its motion to dismiss was pending, which Plaintiffs opposed. ECF Nos. 30, 32, 33. After a hearing, the Court denied the motion, and discovery went forward. ECF No. 35.

30(b)(6) depositions of two corporate designees for Anthem, as well as two additional fact depositions of Anthem employees. *Id.* ¶ 6.

All four named Plaintiffs appeared for deposition, and each responded to numerous RFPs and interrogatories. *Id.* ¶ 8-9. Plaintiffs, collectively, produced more than 5,000 pages of documents responsive to Defendants' RFPs. *Id.* ¶ 7.

A number of complex discovery disputes arose during the discovery period, concerning *inter alia,* the scope of the parties' requests, the relevance of responsive documents, the applicability of the attorney-client privilege and the fiduciary exception thereto, and the alleged burden of producing responsive documents and data. *Id.* ¶ 11. The parties successfully resolved these disputes without requiring judicial intervention, in the process producing hundreds of pages of discovery-related correspondence and dedicating dozens of hours to meet-and-confer sessions. *Id.*

Prior to class certification, the parties also engaged in expert discovery. On May 2, 2022, Plaintiffs offered the expert reports of Dr. Andrew Gerber and Dr. Marc Fishman, and on August 17, 2022, Dr. Gerber supplemented his report. On July 28, 2022, Defendants offered the expert report of Dr. David Rosenberg. The parties completed expert depositions between August 18, 2022 and November 3, 2022. *Id.* ¶ 10.

### E.    Class Certification

Plaintiffs moved for Class Certification on March 17, 2023, supported by extensive evidence gathered in discovery. *See* ECF Nos. 85-87, 92-101. Anthem opposed the motion based on a fulsome discovery record, ECF No. 88, and after Plaintiffs filed a reply in further support, ECF Nos. 89-90, Anthem filed a sur-reply brief. ECF No. 91. Following an oral argument on April 28, 2023, the Court granted the motion, in part, on March 19, 2024. ECF No. 112.

### F.    Settlement Negotiations

In April 2024, the parties began discussing the possibility of a common-fund settlement that would not require the Class Members' requests for benefits to be reprocessed by Anthem. Reynolds Decl. ¶ 13. In connection with those discussions, Anthem produced, and Plaintiffs analyzed, additional data for the Class Members, along with other information about the Class Members' denials. *Id.* ¶ 13, 17. After negotiating for months on their own, the parties engaged a JAMS mediator, Judge Morton Denlow (Ret.), to help the parties reach an agreement. *Id.* ¶ 14. In preparation for the mediation, the parties exchanged mediation statements and jointly prepared a Class Action Checklist working through areas of agreement and identifying remaining disputes. *Id*. Through counsel, the parties participated, via videoconference, in a day-long mediation session on February 11, 2025. *Id.* ¶ 15. Although the parties did not reach an agreement at that time, they continued to discuss a resolution by telephone and email, with Judge Denlow's assistance. *Id.* As of April 15, 2025, the parties reached an agreement on the principal terms of a settlement, *id.* ¶ 16, and so notified the Court. *See* ECF No. 120. The parties then proceeded to negotiate the Settlement Agreement that is the basis for this motion. Reynolds Decl. ¶¶ 16-17. The final, executed Settlement Agreement, together with all of its attachments, is attached hereto as Exhibit 1.[4]

During discovery and in settlement negotiations, Anthem provided Class Counsel with extensive data about the size and composition of the Class for the full Class Period. Reynolds Decl. ¶¶ 3, 13. Plaintiffs requested and received additional information from Anthem about the data. *Id*.

---

[4] For the sake of clarity, the remainder of this Memorandum cites to the Settlement Agreement as Exhibit 1, and to Exhibits A through E to the Settlement Agreement as "Settlement Agreement Ex. __."

The version of the Settlement Agreement attached as Exhibit 1 is redacted to prevent the name of A.I. or his minor daughter from being disclosed. An unredacted version of the Settlement Agreement is being filed under seal as Exhibit 2.

¶ 17. Taken together, the data and the documents and information obtained in discovery allowed Plaintiffs to confirm the information that underlies the terms of the Settlement, evaluate the risks of continuing to litigate and the benefits of the proposed Settlement, and confirm Plaintiffs' conclusion that the Settlement is a reasonable and favorable one for the Class. *Id.* ¶ 25.

## III.    DESCRIPTION OF THE SETTLEMENT

The proposed Settlement has three important components: (1) payment by Anthem of the $12.875 million Settlement Amount, which will be distributed to the Class Members in accordance with a Plan of Allocation approved by the Court; (2) a release by Class Members of certain claims against Anthem related to its use of the Challenged Guidelines to determine medical necessity; and (3) Class notice and an opportunity to opt out of the Settlement.

### A.    The Settlement Payment

The Settlement Agreement provides for Anthem to place the Settlement Amount ($12,875,000.00) into a qualified settlement fund (the "Common Fund"), from which all settlement-related payments will be made as approved by the Court, including distributions to Class Members, attorneys' fees and costs, costs of settlement administration, and any incentive payments to the Class Representatives. Plaintiffs' proposed Plan of Allocation is described in Section III.E, below.

### B.    Release of Certain Claims against Defendants

Upon the Effective Date of the Settlement, the Class Members will release Defendants (and related entities) from the Released Claims, which are defined as follows:

> [A]ll claims raised in the Complaints and any and all liabilities, suits, debts, covenants, controversies, promises, judgments, rights, claims, actions, class claims, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that were or could have been alleged or asserted in this case, with respect to the Class Members' requests

benefits for residential treatment services that were denied for lack of medical necessity throughout the Class Period.

Ex. 1 ¶ 13(y).

### C.    Class Notice and Opt-Out Rights

The Settlement Agreement provides for the Settlement Administrator to send out a Notice of Proposed Class Action Settlement and Fairness Hearing (the "Notice") to all Class Members within thirty (30) days after the Preliminary Approval Order is entered by the Court. Ex. 1 ¶ 37. The proposed form of Notice is attached as Exhibit C to the Settlement Agreement. To the extent not already provided, Anthem will provide Class Data to the Settlement Administrator, which will include the names and available last known addresses of the Class Members, and the Settlement Administrator will use its best efforts to locate and notify Class Members of the proposed settlement. As further described in Section V, *infra,* notice will occur principally by first-class U.S. Mail, supported by a settlement website and toll-free telephone number.

If the Court grants preliminary approval, the Settlement Agreement provides that Class Members will have the opportunity to opt out of the Class or object to the Settlement. Ex. 1 ¶¶ 43, 48. The notice explains the opt-out and objection procedures in detail. *See* Settlement Agmt. Ex. C at 2, 5. To be valid, a request for exclusion from the Class or an objection to the Settlement must be postmarked or submitted online within sixty (60) days after the Notice is issued. Ex. 1 ¶¶ 43, 48.

### D.    Other Provisions

In addition to the foregoing, the proposed Settlement also contains the following provisions:

1.    <u>Class List and Class Claims Data</u>

Within seven (7) days after the Preliminary Approval Order is entered by the Court, and subject to Court approval as provided in 45 C.F.R. § 164.512(e)(1)(i), Defendants will provide Class Counsel and the Settlement Administrator with the Class Data for the purpose of effectuating notice of the Settlement, to the extent the information was not already provided. Ex. 1 ¶¶ 13(e), 35. Such information—which includes personally identifying information about each Class member as well as information regarding Class Members' (or their dependents') mental health and substance use disorder treatments—is necessary in order to (1) confirm mailing addresses of Class Members and distribute the notice documentation; (2) evaluate any Claim submitted by a Class Member for a pro rata share of the Out-of-Pocket Reimbursement Fund and decide whether, and in what amount, the Claim is eligible for payment; and (3) advise any Class Members who contact Class Counsel and/or the Settlement Administrator as to their rights and options in connection with the Settlement.

The Settlement and proposed preliminary approval order contain provisions to ensure the handling of this information consistent with HIPAA and state privacy laws. Ex. 1 ¶¶ 36, 83; Settlement Agmt. Ex. A (proposed preliminary approval order) at 7.

2.    <u>Incentive Awards for the Named Plaintiffs</u>

The Settlement Agreement provides that Plaintiffs may request that the Court approve incentive awards for the Named Plaintiffs in the amount of $10,000 each, to reflect their important contributions to this case, including their service as Class Representatives. Ex. 1 ¶ 24.

3.    <u>Attorneys' Fees and Expenses</u>

Under the Settlement Agreement, Plaintiffs may request an award of Class Counsel's attorneys' fees, in an amount not to exceed one-third (33.33%) of the Settlement Amount, and an award of Class Counsel's litigation costs, including the costs of notice and settlement

administration. Ex. 1 ¶ 23. To ensure Class Members have adequate time to consider Class

Counsel's request for attorneys' fees and reimbursement of litigation costs, as well as the proposed

incentive awards to the Named Plaintiffs, Class Counsel will file a motion for an award of

attorneys' fees, reimbursement of litigation costs, and incentive awards to the Named Plaintiffs

(the "Fee Application") no later than twenty-one (21) days prior to the deadline for objections to

the Settlement and requests for exclusion from the Class. Ex. 1 ¶ 55.

### E.    Description of the Plan of Allocation

Plaintiffs' proposed Plan of Allocation, attached hereto as Exhibit 3, distributes the

Settlement Amount in a way that prioritizes reimbursement for those Class Members who paid

out of pocket for residential treatment after Anthem denied coverage pursuant to the Challenged

Guidelines, while also ensuring that all other Class Members are otherwise awarded fair and equal

compensation for requests for coverage that were allegedly improperly denied, even if they did not

pay for residential treatment after Anthem's denial.

While Anthem's records enable the parties to identify the Class Members, they do not

contain the information necessary to identify all Class Members who paid for residential treatment

after Anthem denied coverage. This is because, after having received a medical necessity denial

for an episode of treatment, Class Members did not necessarily submit a post-service claim for

reimbursement of those services after paying for them out-of-pocket. Reynolds Decl. ¶ 18. For that

reason, the proposed Plan of Allocation provides an opportunity for Class Members to submit

claims for reimbursement of a portion of the out-of-pocket payments they made for residential

treatment services they received that were not covered because of a denial that meets the elements

of the Class Definition. *See generally* Ex. 3, § III.

To be eligible for such "Pro Rata Reimbursement Payments," Class Members must submit

a completed, signed Claim Form and Proof of Payment for qualifying services within ninety (90)

days after the Settlement Administrator sends the Notice described above. Ex. 3, § III.C.1-2. Each Class Member will receive, with the Notice, a Claim Form and instructions for submitting a claim online or by mail. *See* Settlement Agmt. Ex. D. The Settlement Administrator will be responsible for verifying that submitted claims satisfy the requirements for payment. Ex. 3, § III.C.4. If a claim is deemed deficient or ineligible, the Class Member will receive notice and an opportunity to cure the deficiency before their claim is finally determined. Ex. 3, § III.C.6.

Once the Settlement Administrator has made a final determination on all timely submitted claims, it will determine the portion of the Common Fund that is available for distribution to the successful claimants (the "Out-of-Pocket Reimbursement Fund"), after subtracting the amounts approved by the Court to pay attorneys' fees and expenses, costs of settlement administration, incentive awards, and a Nominal Payment of at least $100 to each remaining class member. Ex. 3, § IV.A.1; *see also id.* § III.A. The Settlement Administrator will then determine each claimant's pro rata share of the Out-of-Pocket Reimbursement Fund, based on each claimant's verified Out-of-Pocket Payment amount. Ex. 3, §§ III.C.4, IV.A.2-3. If the Out-of-Pocket Reimbursement Fund is sufficient to reimburse 100% of the successful claimants' Out-of-Pocket Payments, any remaining amount in the fund will be added to the amount to be distributed to the other Class Members as Nominal Payments. Ex. 3, § IV.A.3.

Any Class Member who does not receive a Pro Rata Reimbursement Payment will receive an equal share of the "Nominal Payment Fund." Ex. 3, §§ II.8, IV.B.1. The Nominal Payments will be equal to at least $100.00 per person, and may be more than that if there are excess funds in the Out-of-Pocket Reimbursement Fund after all Pro Rata Reimbursement Payments have been allocated. Ex. 3, §§ II.7, IV.A.3.

### F.      Appointment of Settlement Administrator

Plaintiffs request that the Court appoint Simpluris to serve as the Settlement Administrator to oversee and implement the provision of Notice to the Class and to administer the Settlement in accordance with the Settlement and Plan of Allocation. Simpluris has significant experience serving as the administrator of class action settlements, including cases such as this that require the maintenance, handling, and protection of protected health information ("PHI"). *See* Reynolds Decl. ¶¶ 19-20; Ex. 4 (Simpluris Data Security and Technology summary). *See also*, *e.g.*, *Nnebe v. Daus*, No. 06-cv-4991 (RJS), 2025 WL 1333425, *12 (S.D.N.Y. May 7, 2025) (finding method of distributing class relief effective where, among other things, "the parties have also selected an experienced claims administrator, Simpluris" to administer the settlement); *Kobor v. Skidmore Coll.*, 1:23-CV-1392 (MAD/DJS), 2025 WL 949745, *7 (N.D.N.Y. Mar. 28, 2025) (appointing Simpluris as Settlement Administrator and granting preliminary approval of class settlement).

### IV.      THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL.

### A.      Legal Standard for Preliminary Approval

Judicial review of a proposed class settlement has two phases. First, "prior to notice to the class, a court makes a preliminary evaluation of fairness." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019). Second, after class notice and a hearing, the court decides whether to grant final approval. *Id.*

When considering a motion for preliminary approval, a court should order that notice be given to the class if the parties show that the court "will likely be able to" approve the proposed settlement as "fair, reasonable, and adequate" considering the factors set out in Rule 23(e)(2)—namely, whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

> the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2). *See also In re Payment Card*, 330 F.R.D. at 28. The first two Rule 23(e)(2) factors "are procedural in nature," while the second two "guide the substantive review of a proposed settlement." *Moses v. New York Times Co*., 79 F.4th 235, 242 (2d Cir. 2023).

The analysis required under Rule 23(e)(2) "does not displace" the "*Grinnell* factors" courts in this Circuit have traditionally considered when evaluating the fairness of a proposed class settlement. *Moses*, 79 F.4th at 243. The *Grinnell* factors, which "largely overlap" with the analysis required under Rule 23(e)(2), *id*. at 244, are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Because the notice, opt-out, and objection process will provide additional important information about the proposed settlement, "at the preliminary approval stage . . . 'it is not necessary to exhaustively consider the factors applicable to final approval.'" *In re Payment Card*, 330 F.R.D. at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Rather, preliminary approval is subject to a "likelihood standard," *id*. at 28 n.21, meaning that "to grant preliminary approval, the court need only determine 'that there is what might be termed "probable cause" to submit the [proposed

settlement] to class members and hold a full-scale hearing as to its fairness.'" *Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 349 (E.D.N.Y. 2018) (citation omitted)). In weighing whether this standard is satisfied, "[c]ourts should remain mindful" of the Second Circuit's "strong judicial policy in favor of settlements, particularly in the class action context." *In re Payment Card*, 330 F.R.D. at 27 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

As explained below, after considering the Rule 23(e)(2) factors and the *Grinnell* factors, the Court will likely be able to approve the Settlement as fair, reasonable, and adequate. The Court should therefore preliminarily approve the Settlement and order that notice be given to the Class.

**B.    The Procedural Factors Support Preliminary Approval.**

The first two Rule 23(e)(2) factors "examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *In re Payment Card*, 330 F.R.D. at 29 (quoting 2018 Amendment to Advisory Note).

1.    <u>The Class Representatives and Class Counsel Have Adequately Represented the Class.</u>

The Court is likely to find that the Class Representatives and Class Counsel have adequately represented the Class, contributing substantially to the favorable outcome reflected in the Settlement.

(a)    <u>Class Representatives</u>

A class representative is adequate if he or she has "an interest in vigorously pursuing the claims of the class," and has "no interests antagonistic to the interests of other class members." *In re Payment Card*, 330 F.R.D. at 31. In certifying the Class, this Court has already found that the four named Plaintiffs "are adequate class representatives," because their "interests are aligned with those of the class they seek to represent" and they had each "demonstrated a commitment to the

14

class by participating in written discovery and being deposed." ECF No. 112 at 34. For that reason, the Court appointed the four named Plaintiffs as Class Representatives. *Id*. at 35.

As they have done throughout the case, the four Class Representatives have continued to be diligent, attentive, and unwavering advocates for the interests of the Class throughout the settlement negotiation process. Reynolds Decl. ¶¶ 21-23. Moreover, they will "receive the same type of relief" from the Settlement as the other Class Members, which gives them "the same incentive to maximize cash compensation for past harm." *In re Payment Card*, 330 F.R.D. at 31 (quotation marks omitted).

(b)    <u>Class Counsel</u>

In reviewing the adequacy of Class Counsel's representation in relation to a proposed settlement, the Court "must pay close attention to the negotiating process, to ensure that. . . plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *In re Payment Card*, 330 F.R.D. at 33 (quotation marks omitted).[5] Again, in certifying the Class, this Court previously assessed the experience, knowledge, resources, and the "significant work" Plaintiffs' counsel had done to investigate the Class's claims, before appointing Zuckerman Spaeder LLP, Psych Appeal, Inc., and Berger Montague, PC as Class Counsel. ECF No. 112 at 38-39.

As they have previously established, Class Counsel have considerable experience in the factual and legal subject matter of the case. As summarized briefly in the Reynolds Declaration (¶ 24) and as will be set out at greater length in the Fee Request, the firms have litigated, both

---

[5] As such, this Rule 23(e) factor overlaps with *Grinnell* factor (3), "the stage of the proceedings and the amount of discovery completed," "requires the Court to consider whether the parties have adequate information about their claims." *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2023 WL 5511513, at *9-10 (E.D.N.Y. Aug. 24, 2023) (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012)).

together and separately, numerous ERISA cases relating to behavioral health care and allegedly improper denials of benefits. They also have extensive experience litigating and negotiating favorable settlements of class action cases under ERISA, and have worked with settlement administrators to implement the settlements of such class action cases. *Id.*

In this case, Class Counsel vigorously pursued class and merits fact discovery, completed expert discovery, and engaged in substantive motions practice. *See* §§ I.C-E, *supra*. Through years of effort in litigating the case, the parties have "exchanged sufficient information to understand facts pertinent to the settlement negotiations," and Class Counsel and the Class Representatives have become "well informed of the risks of litigation and benefits of compromise." *Kohari v. MetLife Group, Inc.*, No. 21-cv-6146 (KHP), 2025 WL 100898, *8 (S.D.N.Y. Jan. 15, 2025). All of these facts "support the conclusion that this settlement process was procedurally fair" and that Class Counsel effectively represented the Class Members' interests. *Id.*

### 2.   The Settlement was Negotiated at Arm's Length.

The parties reached agreement on a proposed resolution of the case after years of hard-fought litigation, followed by more than a year of arms-length negotiations and a private mediation through JAMS, during which both sides had ample information enabling them to evaluate the strengths and weaknesses of their respective positions. Reynolds Decl. ¶¶ 2-10, 13-17.

Plaintiffs were well informed during this process. During discovery, Anthem produced extensive information about the Class, the Challenged Guidelines, and its internal policies and procedures that enabled Plaintiffs to evaluate the strength of their claims and Anthem's defenses under ERISA and the Parity Act. *Id.* ¶¶ 2-10. As a condition of settlement, Plaintiffs requested, and Anthem provided, additional information about the size and characteristics of the Class through the end of the Class Period. *Id.* ¶ 17. In response to Plaintiffs' inquiries, Defendants provided additional information, data, and supporting declarations regarding the Class Members'

benefit denials, which Class Counsel analyzed thoroughly. *Id.* ¶ 17. Class Counsel conferred extensively with Anthem's Counsel about the terms of the proposed settlement, and the parties negotiated at length about all material terms of the Settlement Agreement. *Id.* ¶ 16. Only after conducting this rigorous process did Class Counsel recommend, and the Class Representatives agree to, the Settlement Agreement.

It is particularly relevant that the parties ultimately achieved a settlement agreement with the assistance of JAMS mediator Judge Morton Denlow. *Id.* ¶¶ 14-15. "[I]nvolvement of a mediator during the settlement negotiation process weighs in favor of a finding of fairness because it 'helps to ensure that the proceedings were free of collusion and undue pressure. .'" *Hunter v. Blue Ridge Bankshares, Inc.*, No. 23-CV-8944, 2025 WL 1649323, at *15 (E.D.N.Y. June 11, 2025) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). *See also*, *e.g.*, *In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145 (KMW), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) (the fact that settlement was reached with assistance of a JAMS mediator "reinforces that the Settlement Agreement is non-collusive").

### C.    The Substantive Factors Support Preliminary Approval.

A court's review of a proposed class settlement's substantive fairness is focused on the "relief that the settlement is expected to provide to class members." *In re Payment Card*, 330 F.R.D. at 29.

#### 1.    The Relief Provided for the Class is Adequate.

The Court is likely to find that the relief obtained for the Class easily satisfies the "adequacy" standard in Rule 23(e)(2), taking into account all of the considerations listed in the rule. *See* Fed. R. Civ. P. 23(e)(2)(C).[6]

---

[6] Although *Grinnell* also calls for the Court to consider Anthem's "ability to withstand a greater judgment," 495 F.2d at 463, such an ability, "standing alone, does not suggest that the settlement

(a)      <u>The Costs, Risks, and Delay of Trial and Appeal are Significant.</u>[7]

The Settlement provides significant monetary relief to the Class Members, without the need for years of additional litigation, and it relieves the Class Members of the risk that continued litigation might result in no remedy at all. "Settlement is favored if settlement results in 'substantial and tangible present recovery, without the attendant risk and delay of trial.'" *In re Payment Card*, 330 F.R.D. at 36 (quoting *Sykes v. Harris*, No. 09-CV-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016)).

Although Plaintiffs believe they would have a strong chance of prevailing at trial and on any subsequent appeals, the Class would face both procedural and substantive obstacles to obtaining the meaningful relief sought in this complex action. First, Plaintiffs would have to defeat Anthem's anticipated summary judgment motion, and then prevail at trial. Anthem would have asserted a host of merits defenses, and it would have presented evidence and expert testimony to challenge and ultimately try to defeat the Plaintiffs' allegations that the Challenged Guidelines are inconsistent with generally accepted standards and the Class Members' plans. Anthem also would have sought to prove that the Challenged Guidelines do not violate the Parity Act because they were no more restrictive than the ones Anthem uses for requests for benefits for medical/surgical treatment.

Assuming a decision for Plaintiffs on liability, the parties would then have litigated the remedy, including whether Plaintiffs had proven that reprocessing is appropriate relief for all the

---

is unfair." *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2023 WL 5511513, at *10 (quoting *Pinnacle Grp.*, 874 F. Supp. 2d at 201).

[7] "This first factor encompasses several *Grinnell* factors, "'including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial' (*Grinnell* factors 1, 4, 5, and 6)." *Hunter*, 2025 WL 1649323, at *16 (quoting *Rosenfeld v. Lenich*, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021)).

Class Members. Anthem would likely have sought to narrow or decertify the Class before judgment, including by citing the Ninth Circuit Court of Appeals' decertification of an ERISA class's similar denial of benefits claims because it found the class definition to be overbroad for purposes of a reprocessing remedy. *See Wit v. United Behavioral Health*, 79 F.4th 1068, 1086 (9th Cir. 2023). Plaintiffs would also have to defeat Anthem's likely post-judgment appeal, which would similarly include attempts to decertify the class and to reverse any judgment or remedy ordered by the Court. Thus, Class Counsel estimates it would take *at least* an additional two to three years to reach a final, enforceable judgment. Only thereafter would Class Members have any chance of obtaining any of the benefits allegedly wrongly denied because of the Challenged Guidelines—and then, only through reprocessing of their benefit claims under revised medical necessity criteria, during which Anthem could again have denied coverage.

Resolving the cases by settlement eliminates the risk that the litigation could end unsuccessfully, with no recovery at all for Class Members. It avoids years of additional attorneys' fees and litigation expenses. It provides certainty about the amount of each Class Member's recovery, which a reprocessing remedy would leave open. It also gives the Class Members the benefit of the time value of a sum clearly determined by the Plan of Allocation. By receiving money sooner, Class Members can earn interest on, invest, or spend the money, rather than being forced to wait until resolution of the litigation, which would likely take years, to receive an amount that might well be less, or even nothing. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

At the same time, the scope of the release is fair to both sides. In consideration for the substantial benefits to Class Members, the Settlement will allow Anthem to eliminate legal risks

19

associated with years-long litigation relating to claims for residential treatment during the Class Period that involved the use of the Challenged Guidelines (except from those who opt out of the Settlement).

(b)     <u>The Proposed Plan of Allocation is Fair and Adequate.</u>

A plan of allocation must be fair and adequate. Fed. R. Civ. P. 23(e)(2)(C)(ii). It does not have to be perfect, but "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citations omitted). The Court will likely find this factor satisfied because the straightforward proposed Plan of Allocation will fairly and efficiently distribute the Settlement Fund to the Class Members.

The proposed claims processing method "should deter or defeat unjustified claims," but it should not be "unduly demanding." *In re Payment Card*, 330 F.R.D. at 40. The proposed Plan of Allocation satisfies these requirements by requiring Class Members who wish to receive a larger recovery to submit proof that they paid out of pocket for residential treatment services, while remaining flexible as to what combination of documents will be sufficient to establish the necessary facts. Ex. 3, §§ III.C.1, 3; *see also* Settlement Agmt. Ex. D (Claim Form). Furthermore, the Plan of Allocation allows for Class Members to submit proof of payment by mail or online, ensuring that the process of submitting a claim is not overly demanding. Ex. 3, § III.C.2. All other Class Members will receive a Nominal Payment without needing to file a claim at all. Ex. 3, § IV.B.

(c)     <u>The Proposed Award of Attorneys' Fees and Expenses and Incentive Awards for the Class Representatives are Reasonable.</u>

To evaluate the adequacy of the class relief, the Court must "'review both the terms of the settlement and any fee award encompassed in a settlement agreement' in tandem." *Moses*, 79 F.4th

20

at 244 (quoting *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019)).[8]

As noted above, the Settlement Agreement allows for the Class Representatives to seek an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Amount, as well as an award of Class Counsel's litigation expenses and the expenses of settlement administration. The "percentage method" of awarding attorneys' fees in connection with class settlements "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Payment Card*, 330 F.R.D. at 41 (quoting *Wal-Mart Stores*, 396 F.3d at 121). And "[c]ourts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are 'well within the range of reasonableness.'" *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349(NGG)(RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021) (quoting *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 15-cv-441 (MAD), 2016 WL 3406111, at *9 (N.D.N.Y. June 17, 2016), and citing cases).

Under the proposed schedule, Plaintiffs will file, well in advance of the deadline for opt-outs and objections, the Fee Request supporting the reasonableness of Class Counsels' fees and expenses and the Class Representative incentive awards. Class Members will be able to evaluate these requests when deciding whether to participate in or object to the Settlement.

---

[8] Consideration of this Rule 23(e) element, therefore, overlaps substantially with two *Grinnell* factors: "(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

      (d)    <u>There are No Other Agreements Between the Parties.</u>

The parties have not entered into any undisclosed side agreements related to the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv). This factor, therefore, is neutral.

      2.    <u>The Settlement Treats Class Members Equitably Relative to Each Other.</u>

The Court is also likely to find that the Plan of Allocation is fair to all the Class Members.[9] Fed. R. Civ. P. 23(e)(2)(D). In weighing this factor, the Court should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245 (quoting 2018 Amendment to Advisory Note).

The Plan of Allocation appropriately accounts for differences among the Class Members' claims by ensuring that all Class Members will receive at least a Nominal Payment, while making larger recoveries available, on a pro rata basis, for Class Members who establish larger monetary losses. Courts regularly find pro rata distributions to be "sufficiently equitable." *In re Payment Card*, 330 F.R.D. 47. *See also*, *e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F.Supp.3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity"); *Kurtz v. Kimberly-Clark Corp.*, No. 14CV1142PKCRML, 2024 WL 184375, at *8-9 (E.D.N.Y. Jan. 17, 2024) (settlement "applie[d] to all Class Members equally" where Class Members were "each entitled to receive the same payment based on the number of [Defendant's product packages] they purchased and whether they

---

[9] *Grinnell* factor number (2), "the reaction of the class to the settlement," 495 F.2d at 463, can only be considered after the Class Members have received notice of the proposed settlement and an opportunity to object or opt out. Accordingly, Plaintiffs will address that factor in their motion for final approval.

[had] documented Proof of Purchase"). Moreover, because the scope of the Released Claims "applies uniformly" to all the Class Members, it does not "affect the apportionment of the relief" among them. *In re Payment Card*, 330 F.R.D. at 47.

In addition, as will be shown at greater length in the Fee Request, the Class Representatives have earned the proposed incentive awards, which reflect their important contributions to the successful resolution of this case. *See* Reynolds Decl. ¶¶ 21-23. In *Moses*, the Second Circuit Court of Appeals emphasized that "clear precedent. . . permits district courts to approve fair and appropriate incentive awards to class representatives." 79 F.4th at 253. Indeed, the Court of Appeals explained that, so long as they are not excessive, incentive awards *promote* equity by "treat[ing] differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement." *Id.*; *see also id.* at 245 (incentive payments can protect class representatives "from having absent class members free ride on their efforts") (quotation marks omitted). Here, the four requested awards of $10,000, collectively, represent a mere 0.07% of the $12.875 million Settlement Amount, and appropriately recognize the Class Representatives' contributions to the litigation. *See, e.g.*, *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2023 WL 5511513, *9 (contemplated incentive awards of up to $25,000 total for two named plaintiffs "unlikely" to "preclude final settlement approval" of $6.4 million settlement).

## V.    **THE NOTICE PLAN SATISFIES RULE 23 AND DUE PROCESS**

Rule 23(e)(1)(B) requires that the Court direct that notice be given "in a reasonable manner" to Class Members who would be bound by the Settlement. *See, e.g.*, *Hunter*, 2025 WL 1649323, at *13. Notice must be "the best notice that is practicable under the circumstances," including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Due process, likewise, requires that notice be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (citation omitted).

The proposed Notice Program, which contemplates that the Notice will be mailed directly to all Class Members, satisfies these requirements. To the extent not already provided, Anthem will provide Class Counsel and the Settlement Administrator with "Class Data" containing the names and last-known addresses of all the Class Members. Ex. 1 ¶¶ 13(e), 35. The Settlement Administrator will send the Notice of Proposed Class Action Settlement and Fairness Hearing directly to the persons listed in the Class Data, via first class mail. *Id.* ¶ 38. The Notice materials describe the Settlement and Plan of Allocation, Settlement Agmt. Ex. C § 5; provide instructions for opting out, objecting, and submitting claims for Pro Rata Reimbursement Payments, *id.* §§ 5.a, 7-10; and will also provide Class Members the address for a Settlement website, which will contain the same information, as well as other case documents.[10] *See, e.g.*, *id.* at 1.

The proposed Notice thus satisfies due process because it "fairly apprise[s]" the Class Members "of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." *In re Payment Card*, 330 F.R.D. at 58 (quotation marks omitted).

## VI.    **PROPOSED SCHEDULE**

As provided in the Settlement Agreement, Plaintiffs propose the following schedule for the period leading up to the fairness hearing at which the Court will consider whether to grant final approval to the Settlement. *See* Ex. 1 ¶ 55.

| DATE | EVENT |
|---|---|
| Day 1 | Preliminary Approval Order entered |

---

[10] For people listed in the Class Data whose mailed notice is returned as undeliverable, the Settlement Administrator will use its best efforts to locate updated addresses and send the notice to such persons at their new addresses. Ex. 1 ¶ 39.

| Day 7 | Deadline for Anthem to provide Class Data to Settlement Administrator |
| Day 30 | Deadline for the Settlement Administrator to send Class Notice (the "Notice Deadline") |
| Day 69 | Motion for Attorneys' Fees & Costs, Incentive Awards (21 days before Objection Deadline) |
| Day 90 | Deadline to submit Request for Exclusion or Objection to Settlement (Notice Deadline + 60 days) |
| Day 100 | Final Report on Opt-Outs (Opt-Out Deadline +10 days) |
| Day 107 | Motion for Final Approval of Class Settlement |
| Day 120 | Claim Submission Deadline (Notice Deadline + 90 days) |
| TBD | Deadline to retract opt-out notice (5 calendar days before Fairness Hearing) |
| TBD | Fairness Hearing (to be set by the Court on a date no earlier than 90 days after CAFA Notice is sent). |

## VII.  CONCLUSION

For the foregoing reasons, the Court should: (i) grant preliminary approval to the Settlement Agreement; (ii) approve the proposed schedule concerning notice, opt-out, objection, and claim submission deadlines; (iii) appoint Simpluris as the Settlement Administrator; and (iv) set a fairness hearing for final approval of the Settlement. A proposed order is attached.

Dated: June 30, 2025                              Respectfully submitted,

/s/ Caroline E. Reynolds
ZUCKERMAN SPAEDER LLP
D. Brian Hufford
Jason S. Cowart
485 Madison Avenue, 19th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

ZUCKERMAN SPAEDER LLP
Caroline E. Reynolds (*pro hac vice*)
2100 L St., NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com

PSYCH-APPEAL, INC.
Meiram Bendat (*pro hac vice*)
7 West Figueroa Street, Suite 300
PMB #300059
Santa Barbara, CA 93101
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

BERGER MONTAGUE
Julie Selesnick (*pro hac vice*)
1001 G Street, NW, Suite 400 East
Washington, D.C. 20001
Tel: (202) 559-9740
Fax: (215) 875-4604
jselesnick@bm.net

*Counsel for Plaintiffs and the Certified Class*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum of Law complies with the word limit of Local Civil Rule 7.1(c) because it contains 7,722 words, excluding portions exempted by the rule.


Dated: June 30, 2025                    /s/ Caroline E. Reynolds
                                        Caroline E. Reynolds

                                        *Counsel for Plaintiffs and the Certified Class*